**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-593 (ABJ)** |
| **v.** | : | |
| | : | |
| **MATTHEW LOGANBILL,** | : | |
| | : | |
| **Defendant.** | : | |

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS COUNT ONE OF THE INDICTMENT**

---

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits that this Court should deny defendant Loganibll's

motion (ECF No. 45) seeking dismissal of Count One of the Indictment. Count One charges the

defendant with obstruction of an official proceeding and aiding and abetting in violation of 18

U.S.C. §§ 1512(c)(2) and 2.

In his motion the defendant contends that his conduct does not fit within the scope of 18

U.S.C. § 1512(c)(2). The defendant's contentions lack merit.

## FACTUAL BACKGROUND

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress convened

in the United States Capitol building.  The Joint Session assembled to debate and certify the vote

of the Electoral College of the 2020 Presidential Election.  With the Joint Session underway and

with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol.  As

early as 12:50 p.m., certain individuals in the crowd forced their way through, up, and over erected

barricades.  The crowd, having breached police officer lines, advanced to the exterior façade of

the building.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd

from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol.  At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

An affidavit supporting the criminal complaint against the defendant partially describes his role in the January 6, 2021, attack on the Capitol. ECF No. 1. Among other facts, the affidavit describes the defendant's unauthorized presence in restricted areas of the Capitol grounds, where at approximately 2:42 pm, he entered the U.S. Capitol via the Upper West Terrace doors.  He was wearing an olive drab green helmet, gas mask, olive drab crew-neck sweatshirt, beige trousers, and carried a coyote brown backpack, and held an American flag.  Loganbill walked up a flight of stairs, entered the Rotunda and spent approximately 20 minutes in or around the Rotunda.  At approximately 3:10 pm, Loganbill moved into the Rotunda door interior area, and eventually exited the U.S. Capitol via the east front Rotunda doors at approximately 3:15 pm.  Between December 19, 2020 and January 16, 2021, Loganbill posted multiple comments to his Facebook page related to his planning, preparation, and participation in the riot on January 6, 2021.

## **PROCEDURAL HISTORY**

On September 22, 2021, the Grand Jury returned a five-count Indictment charging the defendant with multiple offenses arising from his conduct on January 6, 2021. ECF No. 15.  These offenses include Obstruction of Official Proceeding, 18 U.S.C. § 1512,(c)(2), 2, , Entering and Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2), , Disorderly Conduct in the Capitol Grounds or Building, 40 U.S.C. § 5104(e)(2)(D), and Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G).

On January 7, 2023, the defendant filed a Motion to Dismiss Count One of the Indictment. ECF No. 45.

## LEGAL STANDARD

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).  "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'"  *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).  And an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed."  *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*."  Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial."  *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).  Criminal cases have no mechanism equivalent to the civil rule for summary judgment.  *United States v.*

*Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-cr-40-BAH at *5, 2020 WL 6342940 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the government can prove. Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *Bingert*, 21-cr-93 (RCL) (ECF 67:5) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *McHugh*, 2022 WL 1302880 at *2 (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-cr-454 (PLF), 2020 WL 823079 at *4 (D.D.C. Mar. 19, 2022) (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).

## ARGUMENT

**I.      The Defendant's Motion to Dismiss Count Two of the Indictment, Alleging a Violation of 18 U.S.C. § 1512(c)(2), Lacks Merit.**

Count One of the Indictment charges the defendant with corruptly obstructing, influencing, or impeding an "official proceeding," – *i.e.*, Congress's certification of the Electoral College vote on January 6, 2021 – in violation of 18 U.S.C. § 1512(c)(2). Count Two states:

On or about January 6, 2021, within the District of Columbia and elsewhere, **MATTHEW LOGANBILL** attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

(**Obstruction of an Official Proceeding and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2)

ECF No. 7.

 In 2002, Congress enacted Section 1512(c)'s prohibition on "[t]ampering with a record or otherwise impeding an official proceeding" as part of the Sarbanes-Oxley Act, Pub. L. No. 107-204, 116 Stat. 745, 807.  Section 1512(c)'s prohibition applies to:[w]hoever corruptly--

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) *otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so*.

18 U.S.C. § 1512(c) (emphasis added).  Section 1515(a)(1), in turn, defines the phrase "official proceeding" to include "a proceeding before the Congress."  18 U.S.C. § 1515(a)(1)(B).  By the statute's plain terms, then, a person violates Section 1512(c)(2) when, acting with the requisite *mens rea*, he engages in conduct that obstructs a specific congressional proceeding, including, as here, Congress's certification of the Electoral College vote.

Notwithstanding the plain terms of the offense, the defendant asserts in his motion that the conduct the defendant committed cannot qualify as conduct that "otherwise obstructs, influences, or impedes" the official proceeding as Section 1512(c)(2) is limited by Section 1512(c)(1), ECF No. 26. The defendant's claims lack merit.

Every reported court of appeals decision to have considered the scope of Section 1512(c)(2), and all but one of the judges of this Court to have considered the issue in cases

5

involving January 6, 2021, have concluded that Section 1512(c)(2) prohibits obstruction regardless of its connection to documentary or tangible evidence.  And, in any event, even if a nexus to documentary or tangible evidence were required, the allegations in the First Superseding Indictment, which track the statutory language, adequately inform the defendant about the charge against him; nothing more is required.  *See, e.g.*, *United States v. Williamson*, 903 F.3d 124, 130-131 (D.C. Cir. 2018).

### A.        Section 1512(c)(2) Applies to the Conduct Alleged in the Indictment.

The defendant's argument in his motion relies upon this Court's decision in *United States v. Garret Miller,* 1:21-CR-119 (CJN), ECF No. 72 and contends that the defendant's conduct, like that of Miller, fails to fit within the scope conduct prohibited by § 1512(c)(2). For the reasons set forth below, it is the government's position that the *Miller* opinion was wrongly decided and the government respectfully urges the Court to reconsider its decision in this case.

### 1.  Section 1512(c)(2)'s text, structure, and history confirm that its prohibition covers obstructive conduct unrelated to documentary evidence.

In Section 1512(c)(2), Congress prohibited conduct that intentionally and wrongfully obstructs official proceedings. The ordinary meaning of "obstruct[], influence[], or impede[]" encompasses a range of conduct designed to frustrate an official proceeding. That conduct can include lying to a grand jury or in civil proceedings, exposing the identity of an undercover agent, or burning a building to conceal the bodies of murder victims.  It also includes storming the Capitol to derail a congressional proceeding.  A defendant who, acting with the necessary *mens rea*, obstructs Congress's certification of the Electoral College vote, commits a crime under Section 1512(c)(2).

### A.  Section 1512(c)'s text and structure confirm that Section 1512(c)(2) is not limited to document-related obstructive conduct.

Section 1512(c)(2)'s plain text demonstrates that it prohibits any corrupt conduct that

intentionally obstructs or impedes an official proceeding. When interpreting a statute, courts look first to the statutory language, "giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014) (internal quotation marks omitted). If the statutory language is plain and unambiguous, this Court's "inquiry begins with the statutory text, and ends there as well." *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted). Here, the meaning of "obstruct[], influence[], or impede[]" is controlled by the ordinary meaning of those words.

The verbs Congress selected in Section 1512(c)(2) are "noncontroversial." *Montgomery*, 2021 WL 6134591, at *10. The words "obstruct" and "impede" naturally "refer to anything that 'blocks,' 'makes difficult,' or 'hinders.'" *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (brackets omitted) (citing dictionaries). Similarly, "influence" includes "affect[ing] the condition of" or "hav[ing] an effect on." *Influence*, Oxford English Dictionary, *available at* http://www.oed.com. These verbs plainly apply to obstructive conduct that otherwise might not fall within the definition of document or evidence destruction. *See United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013). When read with Section 1512(c)(2)'s subject ("whoever") and object ("any official proceeding"), those verbs prohibit a defendant "from coming in the way of, blocking, or holding up the business conducted by an official body, such as a court or the Congress, when that body has formally convened for the purpose of conducting that business." *Montgomery*, 2021 WL 6134591, at *10.

Comparing the language in Section 1512(c)(1) to that in Section 1512(c)(2) confirms that the latter, unlike the former, is not a document-focused provision. Section 1512(c) consists of two provisions requiring the defendant to act "corruptly." Both contain a string of verbs followed by one or more direct objects. Section 1512(c)(1) applies to whoever corruptly "alters, destroys,

mutilates, or conceals a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding." The objects—"a record, document, or other object"—are static. In contrast, Section 1512(c)(2) applies to whoever corruptly "obstructs, influences, or impedes any official proceeding." The object—"proceeding"—is dynamic, and the verbs that precede it are all intended to change the movement or course of that "proceeding." They are verbs that do not apply to a fixed "record" or "document" or an inanimate "object." The two sections are related through their connection to an official proceeding: Section 1512(c)(1)'s verbs target forms of evidence tampering (*e.g.*, altering, destroying mutilating) directed at the documents, records, and objects that are used in official proceedings, while Section 1512(c)(2)'s verbs take the proceeding itself as the object—thus prohibiting whatever conduct blocks or interferes with that proceeding without regard to whether that conduct involved documentary or tangible evidence.

Importing into Section 1512(c)(2) a nexus-to-documents requirement would not only require inserting an extratextual gloss, *see Dean v. United States*, 556 U.S. 568, 572 (2009) (courts "ordinarily resist reading words or elements into a statute that do not appear on its face") (internal quotation marks omitted), it would also render the verbs in Section 1512(c)(2) inapt. The *actus reus* that the verbs in Section 1512(c)(2) encompass is obstructing, influencing, and impeding. But "[h]ow [could] anyone [] alter, destroy, mutilate or conceal an 'official proceeding' or how [could] anyone [] 'obstruct[], influence[], or impede[]' 'a record, document, or other object'?" *Montgomery*, 2021 WL 6134591, at \*14; *accord Fitzsimons*, 2022 WL 1698063, at \*12; *cf. Yates v. United States*, 574 U.S. 528, 551 (2015) (Alito, J., concurring) (rejecting interpretation of "tangible object" in Section 1519 that would include a fish in part because of a mismatch between that potential object and the statutory verbs: "How does one make a false entry in a fish?"); *id.* at

544 (plurality opinion) ("It would be unnatural, for example, to describe a killer's act of wiping his fingerprints from a gun as 'falsifying' the murder weapon.").  Such a mismatch is all the more unlikely given how readily Congress could have drafted language that supplies a nexus to documents in Section 1512(c)(2).  *See Montgomery*, 2021 WL 6134591, at *12 (Congress could have enacted a prohibition that covers anyone who "'engages in conduct that otherwise impairs the integrity or availability of evidence or testimony for use in an official proceeding'").

The resemblance between the operative verbs in Section 1512(c)(2) and those Congress enacted in two other obstruction provisions, 18 U.S.C. §§ 1503(a) and 1505, demonstrates that Section 1512(c)(2) was designed to reach more than document-related obstructive conduct. Congress drafted the "omnibus clause" in Section 1503(a), which prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing] . . . the due administration of justice," to serve as a "catchall provision," *United States v. Aguilar*, 515 U.S. 593, 599 (1995), that criminalizes obstructive conduct that falls outside the narrower prohibitions within Section 1503(a) and neighboring provisions.  *See, e.g.*, *United States v. Sussman*, 709 F.3d 155, 168-70 (3d Cir. 2013) (removing gold coins from safe-deposit box); *United States v. Frank*, 354 F.3d 910, 916-19 (8th Cir. 2004) (removing car to avoid seizure); *United States v. Lefkowitz*, 125 F.3d 608, 619-20 (8th Cir. 1997) (instructing employee to remove documents from a house); *United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984) (hiding a witness); *United States v. Brown*, 688 F.2d 596, 597-98 (9th Cir. 1982) (warning suspect about impending search warrant to prevent discovery of heroin). Section 1505, which prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing] . . . the due and proper administration of the law under which any pending proceeding is being had," has been construed to have a similar scope.  *See, e.g.*, *United States v. Vastardis*, 19 F. 4th 573, 587 (3d Cir. 2021) (manipulating an oil content meter to produce an inaccurate reading during a Coast

Guard inspection and making a related false statement).  Like Section 1512(c)(2), Sections 1503(a) and 1505 do not include "any limitation on the nature of the obstructive act other than that it must be committed 'corruptly,'" which "gives rise to 'a fair inference' that 'Congress intended [Section 1512(c)(2)] to have a [broad scope].'"  *McHugh*, 2022 WL 1302880, at *10 (quoting *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 25).

Consistent with the interpretation that obstructive behavior may violate Section 1512(c)(2) even where the defendant does not "take[] some action with respect to a document," *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 28, courts of appeals have upheld convictions under Section 1512(c)(2) for defendants who attempted to secure a false alibi witness while in jail for having stolen a vehicle, *United States v. Petruk*, 781 F.3d 438, 440, 447 (8th Cir. 2015); disclosed the identity of an undercover federal agent to thwart a grand jury investigation, *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009); lied in written responses to civil interrogatory questions about past misconduct while a police officer, *Burge*, 711 F.3d at 808-09; testified falsely before a grand jury, *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009); solicited information about a grand jury investigation from corrupt "local police officers," *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014); and burned an apartment to conceal the bodies of two murder victims, *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021) (unpublished); *see also United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects before issuance or execution of search warrants), *vacated on other grounds*, 139 S. Ct. 2772 (2019); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target).

Interpreted correctly, Section 1512(c)(2) applies to the defendant's conduct, which involved trespassing into the restricted Capitol area and interfering with and assaulting law

enforcement officers.  In so doing, the defendant hindered and delayed an "official proceeding" before Congress.  *See* 18 U.S.C. § 1515(a)(1)(B).  Because construing Section 1512(c)(2) to reach such conduct would neither "frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it."  *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted).

### B. The term "otherwise" reinforces that Section 1512(c)(2) covers obstructive conduct "other" than the document destruction covered in Section 1512(c)(1).

The Court's textual analysis overlooked Section 1512(c)(2)'s verbs and focused almost entirely on the term "otherwise."  But that term, properly interpreted, does not support such a narrowed interpretation of Section 1512(c)(2).

The term "otherwise" means "in another way" or "in any other way."  *Otherwise*, Oxford English Dictionary, *available at* http://www.oed.com. Consistent with its ordinary meaning, the term "otherwise" conveys that Section 1512(c)(2) encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" that Section 1512(c)(1) proscribes. *Burge*, 711 F.3d at 809; *Petruk*, 781 F.3d at 446-47 (noting that "otherwise" in Section 1512(c)(2), understood to mean "in another manner" or "differently," implies that the obstruction prohibition applies "without regard to whether the action relates to documents or records") (internal quotation marks omitted); *United States v. Ring*, 628 F.Supp.2d 195, 224 n.17 (D.D.C. 2009) (noting that Section 1512(c)(2) is "plainly separate and independent of" Section 1512(c)(1), and declining to read "otherwise" in Section 1512(c)(2) "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering");  *see also Gooch v. United States*, 297 U.S. 124, 126-28 (1936) (characterizing "otherwise" as a "broad term" and holding that a statutory prohibition on kidnapping "'for ransom or reward or otherwise'" is not limited by the words "ransom" and "reward" to kidnappings for pecuniary benefit); *Collazos v. United States*, 368 F.3d

11

190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466(a)(1)(C) to reach beyond the "specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court").  That reading follows inescapably from the text of Section 1512(c)'s two subsections read together: Section 1512(c)(1) "describes how a defendant can violate the statute by 'alter[ing], destroy[ing], mutilat[ing], or conceal[ing]' documents for use in an official proceeding," *Puma*, 2022 WL 823079, at *12, while "otherwise" in Section 1512(c)(2) "signals a shift in emphasis . . . from actions directed at evidence to actions directed at the official proceeding itself," *Montgomery*, 2021 WL 6134591, at *12 (internal quotation marks omitted).

In this way, Section 1512(c)(2) criminalizes the same *result* prohibited by Section 1512(c)(1)—obstruction of an official proceeding—when that result is accomplished by a different means, *i.e.*, by conduct *other* than destruction of a document, record, or other object.  *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that 18 U.S.C. § 1503(a), which criminalizes the result of obstructing the due administration of justice, provides specific means of accomplishing that result and then a separate catchall clause designed to capture other means). Section 1512(c)(2), in other words, "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense involving documents or records under Section 1512(c)(1).  *Petruk*, 781 F.3d at 447 (quoting *Volpendesto*, 746 F.3d at 286).

Respectfully, this Court was mistaken in concluding that the interpretation above either "ignores" that "otherwise" is defined with reference to "something else," namely Section 1512(c)(1), or fails to "give meaning" to the term "otherwise." *Miller,* 1:21-CR-119 (CJN), ECF

No. 72 at 21.[1]  Far from suggesting that Section 1512(c)(2) is "wholly untethered to" Section 1512(c)(1), *id.*, "otherwise" as used in Section 1512(c)(2) indicates that Section 1512(c)(2) targets obstructive conduct in a manner "other" than the evidence tampering or document destruction that is covered in Section 1512(c)(1).  That understanding of "otherwise" is fully consistent with each definition the Court surveyed, *see Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 11 (noting that "otherwise" in Section 1512(c)(2) may plausibly be read as "in a different way or manner; differently"; "in different circumstances: under other conditions"; or "in other respects") (internal quotation marks omitted), and does not render the term "pure surplusage," *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 12.

Further, the Court's reasoning that interpreting "otherwise" for purposes of Section 1512(c)(2) in the manner described above is "inconsistent" with *Begay v. United States*, 553 U.S. 137 (2008), where, in the Court's view, analysis of what "'otherwise' meant" was "[c]rucial" to the Supreme Court's decision.  *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 12 is respectfully flawed.

First, in considering whether driving under the influence was a "violent felony" for purposes of the Armed Career Criminal Act (ACCA)'s residual clause, which defines a "violent felony" as a felony that "is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury*," 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added), the Supreme Court in *Begay* addressed a statutory provision that has an entirely different structure than Section 1512(c)(2).  *See Sandlin*, 2021 WL 5865006,

---

[1] The Court also was mistaken in characterizing this interpretation as a "clean break between subsections." *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 11-12.  Far from a "clean break," the term "otherwise" "connects the two clauses by clarifying that the obstructive acts in subsection (c)(2) must be different in some way from the evidence-related obstructive acts listed in (c)(1)." *Fitzsimons*, 2022 WL 1698063, at *7 n.7

at *6 (distinguishing *Begay* on the ground that, unlike the ACCA residual clause, the "otherwise" in Section 1512(c)(2) is "set off by both a semicolon and a line break").   Unlike in the ACCA residual clause, the "otherwise" phrase in Section 1512(c)(2) "stands alone, unaccompanied by any limiting examples."[2]   *Ring*, 628 F.Supp.2d at 224 n.17.   In other words, the "key feature" in Section 924(e)(2)(B)(ii) at issue in *Begay*, "namely, the four example crimes," 553 U.S. at 147, is "absent" in Section 1512(c)(2).   *Caldwell*, 2021 WL 6062718, at *14.   Although the Court recognized the structural difference between the ACCA residual clause and Section 1512(c)(2), *see Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 18-19, it offered no reason to import *Begay*'s interpretation of "otherwise" to Section 1512(c)(2)'s differently structured provision.

In fact, Section 1512(c)(2) is a poor fit for application of the *ejusdem generis* canon that *Begay* applied to the ACCA residual clause and that the Court functionally applied to Section 1512(c).   "Where a general term follows a list of specific terms, the rule of *ejusdem generis* limits the general term as referring only to items of the same category."   *United States v. Espy*, 145 F.3d 1369, 1370-71 (D.C. Cir. 1998).   In *Yates*, for example, the plurality and concurring opinions applied the *ejusdem generis* canon to interpret the word "tangible object" in 18 U.S.C. § 1519, which makes it a crime to "knowingly alter[], destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence" an investigation.   *See* 574 U.S. at 545-56 (plurality opinion); *id.* at 549-50

---

[2] The Court's suggestion (*Miller* 14-15) that "[t]he government also presents an alternative reading" that Section 1512(c)(1) "provides examples of conduct that violates" Section 1512(c)(2). *Miller* 15.   That is incorrect.   Neither the government nor the defendants here nor (to the government's knowledge) any court has proposed or adopted that construction of Section 1512(c)(2).   Considering an interpretation that no party advocates and no court has adopted injects the kind of "front-end ambiguity" that "lead[s] to significant inconsistency, unpredictability, and unfairness in application."   *Wooden v. United States*, 142 S. Ct. 1063, 1076 (2022) (Kavanaugh, J., concurring).

(Alito, J., concurring).   But Section 1512(c)'s structure differs significantly: it includes one numbered provision that prohibits evidence-tampering, followed by a semi-colon, the disjunctive "or," and then a separately numbered provision containing the separate catchall obstruction prohibition.   "The absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008).   Furthermore, in the same way that the *ejusdem generis* canon does not apply to the omnibus clause in Section 1503 that is "one of . . . several distinct and independent prohibitions" rather than "a general or collective term following a list of specific items to which a particular statutory command is applicable," *Aguilar*, 515 U.S. at 615 (Scalia, J., concurring in part and dissenting in part), it has no application to Section 1512(c)(2), which embodies the same structure.   *Cf. Loughrin v. United States*, 573 U.S. 351, 359 (2014) (distinguishing the mail fraud statute (18 U.S.C. § 1341), which "contains two phrases strung together in a single, unbroken sentence," from the bank fraud statute (18 U.S.C. § 1344), which comprises "two clauses" with "separate numbers, line breaks before, between, and after them, and equivalent indentation—thus placing the clauses visually on an equal footing and indicating that they have separate meanings"); *see also McHugh*, 2022 WL 1302880, at *5 (explaining that the *ejusdem generis* canon on which *Miller* relied is "irrelevant" because rather than the "'A, B, C, or otherwise D'" structure found in the ACCA residual clause, Section 1512(c) "follows the form '(1) A, B, C, or D; or (2) otherwise E, F, or G'").

Second, describing the Supreme Court's interpretation of "what 'otherwise' meant" as "[c]rucial (*Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 12) to that Court's decision in *Begay* is an inaccurate description of *Begay*'s analysis.   The majority in *Begay* noted first that the "listed examples" in Section 924(e)(2)(B)(ii)—burglary, arson, extortion, or crimes involving

explosives—indicated that the ACCA residual clause covered only similar crimes. *Begay*, 553 U.S. at 142.  Those examples, the majority reasoned, demonstrated that Section 924(e)(2)(B)(ii) was not designed "to be all encompassing," but instead to cover only "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 142-43.  The majority next drew support for its conclusion from Section 924(e)(2)(B)(ii)'s history, which showed that Congress both opted for the specific examples in lieu of a "broad proposal" that would have covered offenses involving the substantial use of physical force and described Section 924(e)(2)(B)(ii) as intending to encompass crimes "similar" to the examples. *Id.* at 143-44.  In the final paragraph of that section of the opinion, the majority addressed "otherwise," noting that the majority "[could ]not agree" with the government's argument that "otherwise" is "*sufficient* to demonstrate that the examples do not limit the scope of the clause" because "the word 'otherwise' *can* (we do not say *must* . . .) refer to a crime that is similar to the listed examples in some respects but different in others." *Id.* at 144.

A tertiary rationale responding to a party's argument where the majority refrains from adopting a definitive view of "otherwise" cannot be described as "[c]rucial." The majority's "remarkably agnostic" discussion of "otherwise" in *Begay*, which explicitly noted that the word may carry a different meaning where (as here) the statutory text and context indicates otherwise, *Montgomery*, 2021 WL 6134591, at *11, suggests, if anything, that "*the government's* interpretation of 'otherwise' [in Section 1512(c)(2)] is the word's more natural reading," *McHugh*, 2022 WL 1302880, at *5 n.9; *see also Caldwell*, 2021 WL 6062718, at *14 (declining to depart from the "natural reading" of "otherwise" to mean "'in a different way or manner'" based on the discussion in *Begay*).  In short, the majority in *Begay* "placed little or no weight on the word 'otherwise' in resolving the case." *Montgomery*, 2021 WL 6134591, at *11.

Third, whatever the significance of the majority's interpretation of "otherwise" in *Begay*, *Begay*'s holding and the subsequent interpretation of the ACCA residual clause demonstrate the central flaw with imposing an extratextual requirement within Section 1512(c)(2). The Supreme Court held in *Begay* that Section 924(e)(2)(B)(ii) encompasses only crimes that, similar to the listed examples, involve "purposeful, 'violent,' and 'aggressive' conduct." 553 U.S. at 144-45. But "*Begay* did not succeed in bringing clarity to the meaning of the residual clause." *Johnson v. United States*, 576 U.S. 591, 600 (2015). Just as the *Begay* majority "engraft[ed]" the "purposeful, violent, and aggressive conduct" requirement onto the ACCA's residual clause, 553 U.S. at 150 (Scalia, J., concurring in judgment) (internal quotation marks omitted), so too this Court engrafted onto Section 1512(c)(2) the requirement that a defendant "have taken some action with respect to a document, record, or other object" to obstruct an official proceeding, *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 28. In the nearly 20 years since Congress enacted Section 1512(c)(2), no reported cases have adopted the Court's interpretation, and for good reason. That interpretation would give rise to unnecessarily complex questions about what sort of conduct qualifies as "tak[ing] some action with respect to a document" in order to obstruct an official proceeding. *Cf. United States v. Singleton*, No. 06-cr-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished) (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-cr-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceeding[] through his conduct in relation to a tangible object").[3] In brief, this Court's interpretation is likely

---

[3] The Court's interpretation of Section 1512(c)(2) resembles the reading given in *Singleton* and *Hutcherson*, both of which are unpublished and neither of which the Court cited. As noted in the main text, no other court, at least in a reported opinion, appears to have adopted the nexus-to-

to give rise to the very ambiguity it purports to avoid.

### C. Tools of statutory interpretation do not support the Court's narrowed interpretation.

Other tools of statutory construction reinforce the conclusion that Section 1512(c)(2) reaches conduct that obstructs or impedes an official proceeding in a manner other than through document destruction or evidence tampering. In reaching a contrary conclusion, the Court erred in several respects.

First, the Court's suggested that reading Section 1512(c)(2) consistently with its plain language and structure as described above would "introduce something of an internal inconsistency" because Section 1512(c)(2) would have greater breadth than neighboring provisions in Section 1512. *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 21. But the Court's description of Section 1512(c)(2) as an "elephant[] in [a] mousehole[]" because it is found "in a subsection of a subsection nestled in the middle of the statute," *id.*, or placed "unintuitive[ly]" in the "middle-back" of Section 1512, *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 22 n.10, is inaccurate. Section 1512 is comprised of two parts: four subsections that define criminal offenses (Sections 1512(a)-(d)), followed by six subsections that provide generally applicable definitions and clarifications (Sections 1512(e)-(j)).[4] Within the first part, three subsections (Sections 1512(a)-(c)) define criminal offenses with statutory maxima of at least 20 years, *see* §§ 1512(a)(3), (b)(3),

---

tangible-evidence-or-a-tangible-object standard articulated in *Singleton* and *Hutcherson. See United States v. De Bruhl-Daniels*, 491 F.Supp.3d 237, 250-51 (S.D. Tex. 2020) (identifying *Singleton* and *Hutcherson* as outliers from the "most popular—and increasingly prevalent— interpretation of § 1512(c)(2) [as] an unlimited prohibition on obstructive behavior that extends beyond merely tampering with tangible items"); *Ring*, 628 F.Supp.2d at 225 n.18 (disagreeing with *Singleton* and *Hutcherson* but finding that the alleged conduct at issue in that case involved "some nexus to documents"). No court of appeals has cited either case.

[4] Section 1512 also includes one subsection, placed at the end, that adds a conspiracy offense applicable to any of the substantive offenses set out in Sections 1512(a)-(d). 18 U.S.C. § 1512(k).

(c), while Section 1512(d) carries a three-year statutory maximum, § 1512(d).   Within that structure, Congress sensibly placed Section 1512(c)(2) at the very end of the most serious—as measured by statutory maximum sentences—obstruction offenses, precisely where a "catchall" for obstructive conduct not covered by the more specific preceding provisions would be expected.  In any event, the "mousehole" canon provides that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions," *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001), but it "has no relevance" where, as here, the statute in question was written in "broad terms," *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1753 (2020).[5]

Second, the Court is concerned that a reading of Section 1512(c)(2) that encompasses obstructive conduct unrelated to documents would give rise to "substantial superfluity problems." *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 21.  But any overlap is "not uncommon in criminal statutes," *Loughrin*, 573 U.S. at 358 n.4, and Section 1512(c)(2)'s broader language effectuates its design as a backstop in the same way that a "generally phrased residual clause . . . serves as a catchall for matters not specifically contemplated." *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009).  Moreover, the "mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either." *Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005).

Any overlap between Section 1512(c)(2) and other provisions in Section 1512 has a "simple" explanation that does not warrant the Court's narrowing construction.  *McHugh*, 2022 WL 1302880, at *8. When Congress enacted the "direct obstruction" provision in Section

---

[5] Nor is Section 1512 fairly described as a "mousehole[]."  Unlike the "specialized provisions expressly aimed at corporate fraud and financial audits" found toward the end of Chapter 73, Section 1512 consists instead of "broad proscriptions."  *Yates*, 574 U.S. at 541 (plurality opinion).

1512(c)(2), that provision necessarily included the "indirect obstruction prohibited" in the rest of Section 1512.  *Id.*  Congress in Section 1512(c)(2) therefore did not "*duplicate* pre-existing provisions . . . but instead *expanded* the statute to include additional forms of obstructive conduct, necessarily creating overlap with the section's other, narrower prohibitions."  *Id.*  Congress was not required to repeal those pre-existing prohibitions and rewrite Section 1512 "to create a single, blanket obstruction offense" just to avoid overlap.  *Id.* at *9.  "Redundancies across statutes are not unusual events in drafting," *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992), and the "rule[] of thumb" that statutes should be interpreted to avoid superfluity necessarily yields to the "cardinal canon" that Congress "says in a statute what it means and means in a statute what it says there," *id.* at 253-54.  In other words, Section 1512(c)(2) "creates only explicable and indeed inevitable overlap rather than outright redundancy," such that the "purported superfluity" in Section 1512 "simply does not justify displacing the provision's ordinary meaning."  *McHugh*, 2022 WL 1302880, at *10.  That is particularly so here because even a "broad interpretation of § 1512(c)(2) does not entirely subsume numerous provisions within the chapter," and any overlap with other provisions in Section 1512 is "hardly remarkable."  *Sandlin*, 2021 WL 5865006, at *8; *accord Nordean*, 2021 WL 6134595, at *8.

Notably, the Court's interpretation injects a more troubling type of superfluity.  By construing Section 1512(c)(2) to require "some action with respect to a document," *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 28, risks rendering Section 1512(c)(2) itself superfluous in light of the "broad ban on evidence-spoliation" in Section 1512(c)(1).  *Yates*, 574 U.S. at 541 n.4 (plurality opinion) (internal quotation marks omitted); *cf. United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991) (explaining that limiting the catchall provision in Section 1503(a)'s omnibus clause to obstructive acts "directed against individuals" would render the omnibus clause

superfluous because "earlier, specific[] prohibitions" in Section 1503(a) "pretty well exhaust such possibilities") (internal quotation marks omitted).  The canon against surplusage is "strongest when an interpretation would render superfluous another part of the same statutory scheme."  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013).  It is even stronger here, when it would render superfluous "other provisions in the *same enactment*"—namely, the Sarbanes-Oxley Act.  *Freytag v. Comm'r*, 501 U.S. 868, 877 (1991) (emphasis added; internal quotation marks omitted).  At a minimum, the canon does not militate in favor of the Court's reading.  *See United States v. Ali*, 718 F.3d 929, 938 (D.C. Cir. 2013) (canon against surplusage "'merely favors that interpretation which avoids surplusage,' not the construction substituting one instance of superfluous language for another").

Finally, an interpretation of Section 1512(c)(2) that imposes criminal liability only when an individual takes direct action "with respect to a document, record, or other object" to obstruct a qualifying proceeding leads to absurd results.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) (rejecting interpretation of a criminal statute that would "produce results that were not merely odd, but positively absurd").  That interpretation would appear, for example, not to encompass an individual who seeks to "obstruct[], influence[], or impede[]" a congressional proceeding by explicitly stating that he intends to stop the legislators from performing their constitutional and statutory duties to certify the Electoral College vote results by "drag[ging] lawmakers out of the Capitol by their heels with their heads hitting every step," *United States v. Reffitt*, No. 21-cr-32, ECF No. 119 at 20 (D.D.C. Mar. 7, 2022), and then leading a "mob and encourag[ing] it to charge toward federal officers, pushing them aside to break into the Capitol," *Id.* at 19-20, unless he also picked up a "document or record" related to the proceeding during that violent attack.  The statutory text does not require such a counterintuitive result.

In short, if Congress in Section 1512(c)(2) endeavored to create the narrow document-focused provision that the Court envisioned, it "did a particularly poor job of drafting" because Congress would have "effectuated [its] intent in a way that is singularly susceptible to misinterpretation, as evidenced by the overwhelming majority of judges who have construed § 1512(c)(2) broadly." *McHugh*, 2022 WL 1302880, at *11. In accordance with those judges, this Court should reconsider it's atextual, narrowed interpretation.

### D. Legislative history does not support the Court's narrowed interpretation.

Because "the statutory language provides a clear answer," the construction of Section 1512(c)(2) "ends there," and resort to legislative history is unnecessary. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Regardless, the legislative history of Section 1512(c)(2)—particularly when considered alongside the history of Section 1512 more generally—does not support the Court's interpretation of Section 1512(c)(2) for two reasons.

First, Section 1512(c) aimed at closing a "loophole" in Section 1512: the existing prohibitions did not adequately cover a defendant's *personal* obstructive conduct *not* aimed at another person. *See* 148 Cong. Rec. S6550 (statement of Sen. Hatch);. To close that loophole, Section 1512(c)(1) criminalizes a defendant's firsthand destruction of evidence (without having to prove that the defendant induced another person to destroy evidence) in relation to an official proceeding, and Section 1512(c)(2) criminalizes a defendant's firsthand obstructive conduct that *otherwise* impedes or influences an official proceeding (though not necessarily through another person). *See Burge*, 711 F.3d at 809-10. The Court's limiting construction undermines Congress's efforts at loophole closing.

Second, no substantive inference is reasonably drawn from the fact that the title of Section 1512 does not precisely match the "broad proscription" it in fact contains, given that the Sarbanes-

Oxley Act unequivocally and broadly entitled the new provisions now codified in Section 1512(c),

"Tampering with a record *or* otherwise impeding an official proceeding."  Pub. L. No. 107-204, §

1102, 116 Stat. 807 (emphasis added; capitalization altered).  Section 1512's title is more limited

simply because Congress did not amend the pre-existing title when it added the two prohibitions

in Section 1512(c) in 2002.  *Cf. Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331

U.S. 519, 528-29 (1947) (describing "the wise rule that the title of a statute and the heading of a

section cannot limit the plain meaning of the text").

 The Court's conclusion at *Miller,* 1:21-CR-119 (CJN), ECF No. 72 at 23-28 that Section

1512(c)'s historical development and legislative history counsel in favor of its narrowed

interpretation of Section 1512(c)(2) lacks merit.  For example, the Court suggested that Congress

would have had no reason to add Section 1512(a)(2)(B) three months after enacting Section

1512(c)(2) if the latter provision were construed broadly.  *Miller,* 1:21-CR-119 (CJN), ECF No.

72 at 24-25.  Section 1512(a)(2)(B) prohibits the use or threatened use of physical force against

"any person" with the intent to "cause or induce any person" to take one of four actions, including

"alter[ing], destroy[ing], mutilat[ing], or conceal[ing] an object with intent to impair the integrity

or availability of the object for use in an official proceeding."  18 U.S.C. § 1512(a)(2)(B)(ii).  But

as noted above, unlike Section 1512(a)(2)(B), Section 1512(c) aimed generally to impose "direct"

liability for obstructive conduct that was not directed at intimidating or influencing another person.

Understood in that light, Section 1512(a)(2)(B) operates harmoniously with both subsections in

Section 1512(c): Section 1512(a)(2)(B)(ii) reaches a defendant's use of force or threatened use of

force directed at *another person* in order to cause that person to destroy documents in connection

with an official proceeding; Section 1512(c)(1) reaches a defendant's direct destruction of

documents in connection with an official proceeding; and Section 1512(c)(2) reaches a defendant's

non-document-related conduct that obstructs or impedes an official proceeding.  Moreover, to the extent Congress's enactment of Section 1512(a)(2)(B) just three months after the enactment of Section 1512(c) might tend to undermine the plain-language interpretation of Section 1512(c)(2), the fact that Section 1512(a)(2) was "written and first approved" a year earlier than it was enacted—and therefore nine months before Section 1512(c)(2) was enacted—"somewhat undermines the inference" that the Court drew about Section 1512(c)(2)'s scope.  *McHugh*, 2022 WL 1302880, at *9 n.17.

And while the legislators who enacted Section 1512(c) in the Sarbanes-Oxley Act undoubtedly had document shredding foremost in mind, "it is unlikely that Congress was concerned with only the type of document destruction at issue in the *Arthur Andersen* case." *Montgomery*, 2021 WL 6134591, at *16.  In other words, "there is no reason to believe that Congress intended to fix that problem only with respect to 'the availability or integrity of evidence.'"  *Id.*  In addition, if the Court's narrow interpretation were correct, then certain floor statements, such as Senator Hatch's description of Section 1512(c)'s purpose to strengthen an obstruction offense "often used to prosecute document shredding *and other forms of obstruction of justice*," 148 Cong. Rec. S6550 (emphasis added), "would be quite strange."  *McHugh*, 2022 WL 1302880, at *12.

### E.  Section 1512(c)(2)'s *mens rea* and nexus requirements limit the statute's reach.

Although Section 1512(c)(2) applies to any conduct that "obstructs, influences, or impedes," a felony obstruction offense does not exist unless the defendant acts "corruptly" and targets his conduct at a specific "official proceeding."  These two requirements—which require the government to prove a stringent *mens rea* and a nexus to an official proceeding—limit Section 1512(c)(2)'s reach.  *Cf. United States v. Jeter*, 775 F.2d 670, 675 (6th Cir. 1985) (Section 1503(a)

24

"contains a clear *mens rea* requirement that limits its scope to those who 'corruptly' or *intentionally* seek to obstruct"). These requirements thus ensure the appropriate "restraint" on Section 1512(c)(2)'s scope that the Court sought to impose through its atextual limiting construction. *See Marinello*, 138 S. Ct. at 1109 (internal quotation marks omitted) (finding that the required nexus to a particular administrative proceeding limited 26 U.S.C. § 7212(a)'s reach).

1. To violate Section 1512(c)(2), the defendant must act "corruptly." Because "'corruptly'" is not defined in the statute, it carries "its usual meaning." *United States v. North*, 910 F.2d 843, 881 (D.C. Cir. 1990) (per curiam), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990) (per curiam). In *Poindexter*, this Court suggested, while construing Section 1505, that "'corruptly'" was "vague . . . in the absence of some narrowing gloss." 951 F.2d at 378. After surveying the obstruction statute's legislative history (including the "[o]rigins" of Sections 1503 and 1505) and case law interpreting Section 1505, the Court reversed the defendant's conviction because Section 1505 failed to provide "constitutionally required notice" that the defendant's conduct—making false and misleading statements to Congress—fell within the statute's scope. *Id.* at 380, 386. The Court disclaimed any conclusion that "'corruptly'" in Section 1505 was "unconstitutionally vague as applied to all conduct," *id.* at 385, and also declined to adopt as a standard that "'corruptly' means that in acting, the defendant aimed to obtain an 'improper advantage for [himself] or someone else inconsistent with official duty and rights of others,'" *id.* at 385-86 (quoting *North*, 910 F.2d at 881-82).

For purposes of Section 1512(c)(2), "corruptly" requires proof of "consciousness of wrongdoing." *See United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *see also United States v. Lonich*, 23 F.4th 881, 906 (9th Cir. 2022) (applying the

"'consciousness of wrongdoing'" standard). That the term "corruptly" requires the government to prove that a defendant acted not only with intent to obstruct but also with "consciousness of wrongdoing" ensures that only those who understand the character and import of their actions are punished. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005). That limitation is particularly important where, as here, the defendants are alleged to have obstructed a congressional proceeding. *See North*, 910 F.2d at 882 (noting that an "executive branch official" or a "political activist" may seek to persuade a representative to "stop[] spending her time pursuing a certain investigation" but instead pursue "some other legislative endeavor"; that conduct could be viewed as "endeavoring to impede or obstruct the investigation, but it is not necessarily doing so corruptly").

To prove that an attempted or actual obstruction of a congressional proceeding amounts to felony obstruction in violation of Section 1512(c)(2), the government must bear the "heavy burden" to prove that the defendant intended to obstruct the proceeding; that "the natural and probable effect of the defendant's actions were to obstruct the official proceeding," *Montgomery*, 2021 WL 6134591, at *22; and that the defendant acted either "with a corrupt purpose" or through "independently corrupt means," or both, *see Sandlin*, 2021 WL 5865006, at *11 (quoting *North*, 910 F.2d at 942-43 (Silberman, J., concurring in part and dissenting in part)).[6]

2. To establish a violation of Section 1512(c)(2), the government must also satisfy the "nexus" requirement, namely, that the defendant "contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an official proceeding." *United States v. Young*, 916 F.3d 368, 386 (4th Cir. 2019) (internal quotation marks omitted). "'[T]he

---

[6] Jury instructions in Section 1512(c)(2) cases arising out of the January 6 Capitol attack have defined "corruptly" in this manner. *See, e.g.*, *Reffitt*, No. 21-cr-32, ECF No. 119 at 25-26 (D.D.C. Mar. 7, 2022); *Robertson*, No. 21-cr-34, ECF No. 86 at 12-13 (Apr. 8, 2022).

nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of "corruptly" obstructing or endeavoring to obstruct[.]'" *Id.* at 385 n.12 (quoting *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009)).

The nexus requirement derives from the Supreme Court's decision in *Aguilar*, 515 U.S. 593. There, the defendant was convicted under Section 1503(s)'s omnibus clause for lying to an FBI agent "who might or might not testify before a grand jury." *Id.* at 600. That uncertainty was too attenuated to give rise to criminal liability because an obstructive act must "have a relationship in time, causation, or logic" with the official proceeding. *Id.* at 599-600. That was so, the Court held, because "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Id.* at 599.

The Supreme Court's decision in *Arthur Andersen* applied the nexus requirement to Section 1512(b)(2)(A) offenses, which prohibit "knowingly" and "corruptly persuad[ing]" another to destroy documents in contemplation of an official proceeding. *See* 544 U.S. at 703. Observing that "[i]t is . . . one thing to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,'" *id.* at 707; *see* 18 U.S.C. § 1512(f), the Supreme Court found it "quite another to say a proceeding need not even be foreseen," 544 U.S. at 708. To secure a conviction under Section 1512(b), therefore, the government must prove that the defendant has "in contemplation" a "particular official proceeding in which [the tampered-with] documents might be material." *Id.*; *see also Marinello*, 138 S. Ct. at 1109 (applying nexus requirement to tax obstruction statute).

The same logic applies to Section 1512(c)(2).  *See Ring*, 628 F.Supp.2d at 223 (applying nexus requirement to Section 1512(c)(2)).[7]  Courts considering prosecutions brought under Section 1512(c)(2), moreover, have vacated convictions where the evidence failed to establish a sufficient nexus between the obstructive act and the alleged official proceeding.  *See Young*, 916 F.3d at 387-89 (defendant's general awareness that the government might be investigating him was insufficiently connected to "a *specific* and *reasonably foreseeable* official proceeding"); *United States v. Friske*, 640 F.3d 1288, 1292-93 (11th Cir. 2011) (government failed to prove that the defendant who, at a friend's request, retrieved items that were subject to criminal forfeiture, "knew that the natural and probable result of his actions would be the obstruction of [the friend's] forfeiture proceeding").  To be sure, establishing a "relationship in time, causation, or logic," *Aguilar*, 515 U.S. at 599, between the obstructive conduct and the official proceeding in the defendants' case, where they are alleged to have forced their way into the Capitol to impede Congress's certification of the Electoral College vote at the very moment that certification was underway, may not raise the borderline questions at issue in other cases.  But the nexus requirement nonetheless imposes a meaningful "restraint" on the "reach of a federal criminal [obstruction] statute."  *Marinello*, 138 S. Ct. at 1106 (quoting *Aguilar*, 515 U.S. at 600).

3.      The *mens rea* and nexus requirements appropriately restrain Section 1512(c)(2)'s reach.  A defendant does not violate the statute unless, at minimum, he intentionally and with consciousness of wrongdoing obstructs (or attempts to obstruct) a particular, foreseeable proceeding that qualifies as an "official proceeding" under Section 1515(a)(1).

---

[7] Although neither the Supreme Court nor this Court has extended the "nexus" requirement to Section 1512(c)(2), every court of appeals to have confronted the question has.  *See Young*, 916 F.3d at 386 (collecting cases).

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      */s/ DOUGLAS MEISEL*
Douglas S. Meisel
Trial Attorney - Detailee
New York Bar No. 4581393
U.S. Attorney's Office for the District of Columbia
601 D. Street, N.W.
Washington, D.C. 20530
202-598-2281 (office)
202-923-7821 (cell)
douglas.meisel@usdoj.gov