UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Crim. Action No. 21-0593 (ABJ) |
| ) | |
| MATTHEW EUGENE LOGANBILL, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Defendant Matthew Eugene Loganbill has been charged in a five-count indictment with the following offenses:

> Count I – Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2), 2;
>
> Count II – Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1);
>
> Count III – Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);
>
> Count IV – Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D);
>
> Count V – Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

Indictment [Dkt. # 15]. He filed a motion to dismiss Count One, *see* Def.'s Mot. to Dismiss Count I [Dkt. # 45] ("Count I Mot."), and a separate motion to dismiss Counts Two and Three. *See* Def.'s Mot. to Dismiss Count II and III [Dkt. # 46] ("Counts II and III Mot."). The government opposes both motions. *See* Gov't's Opp. to Def.'s Mot. to Dismiss Count I [Dkt. # 47] ("Opp. Count I Mot."); Gov't's Opp. to Def.'s Mot. to Dismiss Counts II and III [Dkt. # 49] ("Opp. Counts II and III Mot."). For the reasons set forth below, the motions will be **DENIED.**

**LEGAL STANDARD**

The Federal Rules of Criminal Procedure require that an indictment must consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The charging document "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018), quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974), quoting *United States v. Carll*, 105 U.S. 611, 612 (1882).

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," Fed. R. Crim. P. 12(b)(3)(B), including constitutional challenges. *See United States v. Eshetu*, 863 F.3d 946, 952–53 (D.C. Cir. 2017), *vacated in part on reh'g on other grounds*, 898 F.3d 36 (D.C. Cir. 2018). "When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations." *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015), citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952). A dismissal of an indictment "is granted only in unusual circumstances," because "a court's 'use [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury.'" *Id.* at 148, quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995).

## ANALYSIS

Defendant "recognizes that this Court and a majority of the Court's colleagues have denied motions to dismiss on the same grounds raised here." Count I Mot. at 2 n.2. Indeed, all of the legal challenges defendant raises in his motions have been considered and rejected by other courts in this district. *See, e.g.*, *United States v. Robertson*, 588 F. Supp. 3d 114, 119–122 (D.D.C. 2022), *recons. denied*, 610 F. Supp. 3d 229, 232–36 (D.D.C. 2022) (18 U.S.C. § 1512(c)(2)); *United States v. Fitzsimons*, 605 F. Supp. 3d 132, 137–40 (D.D.C. 2022) (18 U.S.C. § 1512(c)(2)); *United States v. Bingert*, 605 F. Supp. 3d 111, 115–28, 130–31 (D.D.C. 2022) (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1)); *United States v. Reffitt*, 602 F. Supp. 3d 85, 92–94 (D.D.C. 2022) (18 U.S.C. § 1512(c)(2)); *United States v. Puma*, 596 F. Supp. 3d 90, 96–114 (D.D.C. 2022) (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Grider*, 585 F. Supp. 3d 21, 27–34 (D.D.C. 2022), *recons. denied*, 617 F. Supp. 3d 42, 48 (D.D.C. 2022) (18 U.S.C. § 1512(c)(2)); *United States v. McHugh*, 583 F. Supp. 3d 1, 11–23, 29–35 (D.D.C. 2022), *recons. denied*, No. 21-cr-453 (JDB), 2022 WL 1302880, at *2–13 (D.D.C. May 2, 2022) (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Montgomery*, 578 F. Supp. 3d 54, 61–87 (D.D.C. 2021) (18 U.S.C. § 1512(c)(2)); *United States v. Nordean*, 579 F. Supp. 3d 28, 41–54, 59–60 (D.D.C. 2021) (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 24–28 (D.D.C. 2021) (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1)); *United States v. Caldwell*, 581 F. Supp. 3d 1, 10–34 (D.D.C. 2021) (18 U.S.C. § 1512(c)(2)); *United States v. Sandlin*, 575 F. Supp. 3d 16, 21–34 (D.D.C. 2021) (18 U.S.C. § 1512(c)(2)); *United States v. Gossjankowski*, No. 21-cr-123 (PLF), 2023 WL 130817, at *3–10 (D.D.C. Jan. 9,

3

2023) (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Sheppard*, No. 21-cr-203 (JDB), 2022 WL 17978837, at *2–4 (D.D.C. Dec. 28, 2022) (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Gillespie*, No. 22-cr-60 (BAH), 2022 WL 17262218, at *3–5 (D.D.C. Nov. 29, 2022) (18 U.S.C. § 1512(c)(2)); *United States v. Weeks*, No. 21-cr-247 (TFH), 2022 WL 9296415, at *3–5 (D.D.C. Oct. 14, 2022) (18 U.S.C. § 1512(c)(2)); *United States v. Hale-Cusanelli*, No. 21-cr-37 (TNM), 2022 WL 4300000, at *1–3 (D.D.C. Sept. 19, 2022) (18 U.S.C. § 1512(c)(2)); *United States v. Brock*, No. 21-cr-140 (JDB), 2022 WL 3910549, at *2–5 (D.D.C. Aug. 31, 2022) (18 U.S.C. § 1512(c)(2)); *United States v. Andries*, No. 21-cr-93 (RC), 2022 WL 768684, at *3–17 (D.D.C. Mar. 14, 2022) (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Bozell*, No. 21-cr-216 (JDB), 2022 WL 474144, at *2–9 (D.D.C. Feb. 16, 2022) (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)).

One court did grant a motion to dismiss a count charging a violation of 18 U.S.C. § 1512(c)(2) on one of the grounds advanced by the defendant, but that decision has been overturned by the Court of Appeals.[1] *See United States v. Miller*, 589 F. Supp. 3d 60, 67, 79 (D.D.C. 2022), *recons. denied*, 605 F. Supp. 3d 63 (D.D.C. 2022), and *rev'd and remanded sub nom. United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023).

---

1   In *United States v. Miller*, the district court ruled that the congressional certification of the Electoral College results is an "official proceeding" for purposes of 18 U.S.C. § 1512. But it found that the obstruction provision in section 1512(c)(2) only applies if the defendant took some action with respect to a document, record, or other object, and therefore, did not cover the conduct alleged in the indictment. 589 F. Supp. 3d at 67, 78–79; *see also United States v. Fischer*, No. 21-cr-234, 2022 WL 782413, at *4 (D.D.C. Mar. 15, 2022) (same); *United States v. Lang*, No. 21-cr-53 (D.D.C. June 7, 2022) (dismissing section 1512(c)(2) count via minute order for the reasons discussed in *Miller*).

**I.    Count One: Violation of 18 U.S.C. §§ 1512(c)(2) and 2**

Count One alleges:

> On or about January 6, 2021, within the District of Columbia, MATTHEW LOGANBILL attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18.

Indictment at 1.

Section 1512(c) states:

> (c) Whoever corruptly—
>
> > (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> >
> > (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512.

Defendant relies upon the district court's reasoning in *United States v. Miller* to argue first that his alleged actions did not qualify as conduct that "otherwise obstructs, influences, or impedes" an official proceeding because section 1512(c)(2) requires a defendant to have taken "some action with respect to a document, record, or other object." Count I Mot. at 2–3, 8, citing *Miller*, 589 F. Supp. 3d at 78–79. But this argument has been foreclosed by the D.C. Circuit's recent decision in *United States v. Fischer*.

In *Fischer*, the D.C. Circuit reversed and remanded the district court's decision in *Miller* regarding the conduct covered by the statute, holding that section 1512(c)(2) unambiguously encompasses "all forms of obstructive acts" and "not just those limited to tampering with

5

documents or objects." 64 F.4th at 337. In its opinion, the court made reference to the rulings to that effect issued by fourteen courts in this district, including this Court's decision in *Williams*. *See id.* at 338 n.3, citing *United States v. Williams*, No. 21-cr-618, 2022 WL 2237301, at *17 n.13 (D.D.C. June 22, 2022) (finding that the language and structure of the statute clearly indicate that a person can violate section 1512(c)(2) through means that differ from document destruction). Therefore, the indictment will not be dismissed based on defendant's reliance on the reasoning in *Miller*.

Second, defendant maintains that the Electoral College certification on January 6 was not an "official proceeding" for purposes of the statute because it was not a tribunal-like proceeding. Count I Mot. at 9–13. The scope of the term "official proceeding" is not left to the reader's imagination, but is specifically defined in the statute to include:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1).

Notwithstanding the fact that Congress used clear and unambiguous language to define "official proceeding" to include a "proceeding before the Congress," defendant insists that the term

should be given a narrow reading and limited to those occasions when the proceeding is serving a quasi-judicial function. Count I Mot. at 9–13.

This Court has already found that defendant's interpretation is contrary to the plain text of the statute, and that the attempt to narrow the reach of section 1512(c)(2) to obstructing the administration of justice in an adjudicative context is not supported by the legislative history or the structure of the statute as a whole. *See Williams*, 2022 WL 2237301, at *8–13; *see also United States v. Rodriguez*, No. 21-cr-246, 2022 WL 3910580, at *3–8 (D.D.C. Aug. 31, 2022); *United States v. Gray*, No. 21-cr-495, 2023 WL 2998862, at *4–5 (D.D.C. Jan. 26, 2023); Order, *United States v. Black*, Case No. 21-cr-127 (D.D.C. July 26, 2022) [Dkt. # 51].

Among other things, this Court has observed:

> When one reads the words "proceeding before the Congress" in the context of the other "official proceedings" specified in the list – "a proceeding before a judge or court . . . or a Federal grand jury," "a proceeding before a Federal Government agency which is authorized by law," and "a proceeding . . . before any insurance regulatory official or agency" – the term appears to apply to a formal gathering before the body in question, *see United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013), which is conducted under legal auspices, and is authorized to render some sort of decision or outcome. One would be hard-pressed to identify many other proceedings on Capitol Hill with more formality than a joint session of both houses of Congress that is called for by the Constitution itself, and over which the Vice President of the United States is required to preside. *See* U.S. Const. art. II, § 1; U.S. Const. amend. XII. This was not merely a ceremonial gathering, as one might describe a State of the Union address, but it fits the definition of a proceeding "before the Congress" because a quorum consisting of "a Member or Members from two thirds of the States, and a Majority of all the States" was required to be there, U.S. Const. art. II, § 1, cl. 3, and there was something specific to be determined: the outcome of the presidential election.

*Williams*, 2022 WL 2237301, at *9. Furthermore:

> The limitation would be illogical, since Congress was created in Article I of the Constitution to be the legislative branch of the tripartite government, with powers distinct from those of the other branches. While it may hold hearings to gather information relevant to potential enactments and amendments, and to perform its oversight responsibilities, it seldom sits as an adjudicative body or as the decision maker in an adversary proceeding.

7

*Id.*

Even the *Miller* court agreed with the government that the congressional certification of the Electoral College results qualified as an "official proceeding," *Miller*, 589 F. Supp. 3d at 67, 79, and the D.C. Circuit confirmed that the statutory definition of "official proceeding" includes a "proceeding before the Congress." 64 F.4th at 342–43.

> Although appellees strain to argue that the Electoral College vote certification is not a "proceeding before the Congress" because it does not involve "investigations and evidence," . . . we see no such limit in the ordinary meaning of the word "proceeding." *See Proceeding*, *Oxford English Dictionary* (2d ed. 1989) ("[T]he carrying on of an action or series of actions.").

*Id.* (alteration in original).

Finally, defendant contends that the term "corruptly" as used in section 1512(c)(2) is vague and therefore renders the statute unconstitutionally vague, or, in the alternative, that "corruptly" can only mean "with the intent to obtain an unlawful advantage for oneself or an associate contrary to the due administration of justice." Count I Mot. at 14–20. As this Court has previously found, the "inclusion of the term does not render the statute unconstitutionally vague." *Williams*, 2022 WL 2237301, at *15. Although the D.C. Circuit's lead and concurring opinions in *Fischer* could not agree upon the meaning of "corruptly," both agreed that the indictment – similar to the one in this case – sufficiently alleged that defendant "corruptly" obstructed, influenced, and impeded an official proceeding. *See Fischer*, 64 F.4th at 340 (lead opinion) (holding that "'corrupt' intent exists at least when an obstructive action is independently unlawful" but refusing to adopt a definition because "the sufficiency of the indictments in [the] case [did] not turn on the precise definition of 'corruptly'" and the indictment alleged conduct sufficient to meet that element); *id.* at 361 (Walker, J., concurring in part and concurring in the judgment) (concurring in the Court's judgment that the indictment should be upheld because it alleges that defendants

"corruptly obstruct[ed], influence[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote.") (alterations in original).

Given the language of the statute and the guidance provided by the Court of Appeals, the Court agrees with the determinations of other courts in the district that the inclusion of the term "corruptly" does not render the statute unconstitutionally vague. Of course, the government still has to prove the requisite level of intent, and the Court will provide jurors with instructions as to the meaning of the term "corruptly." Depending on the facts introduced at trial, the defendant may have a valid argument at the close of the government's case that the evidence was insufficient to establish the necessary element of a corrupt purpose. At this juncture, though, predictions about the state of the record at that time are not a basis to dismiss the indictment on its face. *See McHugh*, 583 F. Supp. 3d at 10 ("In deciding a motion to dismiss an indictment, the question before the Court is a narrow one, and the court will neither review the sufficiency of the evidence against the defendant nor craft jury instructions on the elements of the crimes charged.") (brackets and citations omitted).

For all of these reasons, defendant's motion to dismiss Count One is **DENIED**.

## II.   Counts Two and Three: Violations of 18 U.S.C. § 1752(a)(1) and (a)(2)

Defendant filed a motion to dismiss Count Two, which charges him with entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1), and Count Three, which charges him with disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2), on the basis that he was not in a "restricted building." *See* Counts II and III Mot. at 7.

Section 1752(a)(1) states: "Whoever . . . knowingly enters or remains in any restricted building or grounds without lawful authority to do so . . . or attempts or conspires to do so, shall be punished." 18 U.S.C. § 1752(a).

The phrase "restricted building or grounds" is defined in the statute:

> (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
>
> (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
>
> (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
>
> (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance . . . .

18 U.S.C. § 1752(c)(1).

Defendant maintains that the Capitol cannot be considered to be "a building or grounds where the [Vice President] is or will be temporarily visiting" because he was "*not* 'temporarily visiting' the Capitol when fulfilling his constitutional obligations," but rather "simply going to work." Counts II and III Mot. at 2, 9 (emphasis in original). He points to the fact that the Vice President "has a dedicated, *permanent* office reserved for their use in the Senate." *Id.* at 4 (emphasis in original). Because "'[t]emporarily visiting' does not encompass travel to and from one's own office or place of business," defendant argues that these counts cannot stand. *Id.* at 8.

This Court has already ruled that this "strained interpretation is inconsistent with both the text and the structure of the statute." *See Williams*, 2022 WL 2237301, at *19; *see also Rodriguez*, 2022 WL 3910580, at *16.

> The Oxford English Dictionary defines "temporarily" as "[f]or a time (only); during a limited time." *Temporarily*, Oxford English Dictionary (2d ed. 1989); *see also Temporarily*, Merriam-Webster Dictionary,

10

> https://www.merriam-webster.com/dictionary/temporarily ("during a limited time"). It defines "visit" as "a short or temporary stay at a place." *Visit*, Oxford English Dictionary (2d ed. 1989) (definition "d."); *see also Visit*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/visit ("to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)"). Taken together then, as was plain even before the dictionary was consulted, the phrase "temporarily visiting" means being somewhere for a limited period of time, and there is no linguistic reason why the phrase could not include being there for a business purpose.

*Williams*, 2022 WL 2237301, at *19 (alteration in original). Moreover:

> This definition obviously encompasses Vice President Pence's actions on January 6, 2021. He went to the Capitol with a discrete purpose: to certify the Electoral College votes, a process that by law is contemplated to take one day. *See* 3 U.S.C. § 15 ("Congress shall be in session *on the sixth day of January* succeeding every meeting of the electors. The Senate and House of Representatives shall meet . . . at the hour of 1 o'clock in the afternoon on that day, and the President of the Senate shall be their presiding officer.") (emphasis added). He remained in the Capitol until after the certification process concluded. *See* Kyle Cheney, *Capitol Police: Pence Remained on Capitol Grounds Throughout Jan. 6 Attack*, Politico (Feb. 4, 2022), https://www.politico.com/news/2022/02/04/jan-6-pence-remained-on-capitol-grounds-00005919.

*Id.* While defendant insists that the Vice President could not have been "temporarily *visiting*" the Capitol on January 6 because he regularly *works* there, Counts II and III Mot. at 9 (emphasis added), this simplistic assertion also ignores the structure of the definition in question. As this Court has stated:

> A restricted building is defined to be, first, the White House or the Vice President's residence, and second, any place where those subject to Secret Service protection may be temporarily visiting. *See* 18 U.S.C. § 1752(c)(1)(A)–(B). This structure reflects that it is the White House and the Vice President's residence where the President and Vice President live and maintain their primary working offices, *see McHugh*, 2022 WL 296304, at *22. . . The mere fact that the Vice President has a "ceremonial" office available when called upon to conduct business within the Capitol building. . . does not make the stay on the Capitol grounds any less temporary, and the fact that the Vice President has constitutional duties to perform there is not inconsistent with the ordinary understanding of a "visit." *See Andries*, 2022 WL 768684, at *16 ("[T]here are situations in

11

> which it would be quite natural to say that a person "temporarily visits" a place where she has an office:  consider a CEO of an international corporation who normally works from headquarters in New York, but who maintains an office for her occasional use at the firm's satellite location in London.").

*Williams*, 2022 WL 2237301, at 20.  The language in 18 U.S.C. § 1752(a)(1) and (2) is plain and unambiguous:  the term "restricted building or grounds" encompasses the United States Capitol, which the Vice President was "temporarily visiting" on January 6, 2021.  The Court will **DENY** defendant's motion to dismiss Counts Two and Three.

## CONCLUSION

For all of these reasons, defendant's motion to dismiss Count One [Dkt. # 45] and motion to dismiss Counts Two and Three [Dkt. # 46] are **DENIED.**

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE:       May 1, 2023