UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-593 (ABJ) |
| v. : | |
| : | |
| MATTHEW LOGANBILL, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR VIOLATION OF HIS RIGHT TO A SPEEDY TRIAL

The United States of America, by and through its attorney, United States Attorney for the District of Columbia, respectfully opposes defendant Matthew Loganbill's motion to dismiss the indictment on the ground that the Speedy Trial Act ("STA"), 18 U.S.C. § 3161-62, allegedly has been violated. ECF No. 52. The defendant incorrectly identifies January 27, 2023 as the date when time under the STA began to expire, and argues that no grounds supported the exclusion of time from STA calculations following that date. The United States submits that this Court has sufficient grounds to find exclusion of time under the STA that demonstrate compliance with its requirements. Moreover, even if this Court found otherwise, the defendant fails to satisfy requirements for the dismissal with prejudice he demands. *See* 18 U.S.C. 3162(a)(2). Accordingly, his motion should be denied.

### RELEVANT PROCEDURAL HISTORY

As a result of his conduct during the January 6, 2021 attack on the United States Capitol, federal agents arrested the defendant in Versaille, Missouri pursuant to a criminal complaint charging him with violations of 18 U.S.C. § 1512(c)(2), 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). ECF 1; March 29, 2021 Docket Entry. On April 2, 2021 the defendant appeared by video-teleconference for his initial appearance in this district and moved

for the appointment of counsel. April 2, 2021 Docket Entry. During that proceeding, the Honorable G. Michael Harvey denied the defendant's oral motion for appointment of counsel and scheduled a status hearing for May 3. April 2, 2021 Minute Entry.

On May 3, the defendant orally moved for appointment of counsel on an interim basis. May 3, 2021 Docket Entry. Magistrate Judge Harvey found the defendant was temporarily eligible for court-appointed counsel, appointed the Federal Public Defender to represent the defendant for 30 days, and set a status hearing regarding ascertainment of counsel for May 27, 2021. May 3, 2021 Minute Entry. On May 27, 2021, the defendant again moved orally for temporary appointment of counsel. May 27, 2021 Docket Entry. The Honorable Robin M. Meriweather granted the motion, instructed that any motion for reconsideration of the temporary appointment of counsel should be presented to Magistrate Judge Harvey, and set a status hearing/ascertainment of counsel before Magistrate Judge Harvey on July 12, 2021. May 27, 2021 Minute Entry.

On June 11, 2021, the defendant filed a motion for reconsideration of appointed counsel's temporary eligibility and sought the Federal Public Defender's permanent appoint as counsel. ECF 10. On July 23, 2021, Magistrate Judge Harvey held a status hearing, determined that the Federal Public Defender would continue with representation of the defendant, scheduled another status hearing for September 24, 2021, and scheduled a January 7, 2022 status hearing to determine the defendant's ability to pay for services from the Federal Public Defender. July 23, 2021 Minute Order; ECF 14 at 2, n.1. During the July 23, 2021 status hearing, Magistrate Judge Harvey ordered the Federal Public Defender's Office to track the hours spent representing the defendant in case a recoupment of funds was warranted. He denied the motion for reconsideration's application for the Public Defender's permanent appointment; granted the motion "to the extent that the Court has found the defendant presently eligible for counsel," and left open the question of whether the

defendant would, at a later time, need to pay for some of his legal expenses. Magistrate Judge Harvey also ruled that "the ascertainment of counsel/recoupment issues will remain with the undersigned" and directed the parties to appear before him on January 7, 2022 at 1:00 p.m. September 23, 2021 Minute Order.

On September 22, 2021, a federal grand jury returned an indictment charging the defendant with the same offenses charged in his criminal complaint. ECF 15. The indictment was entered on the docket on September 23, 2021, and the defendant's arraignment occurred on that date. *Id*; September 23, 2021 Minute Entry. From the time the indictment was filed until January 6, 2023, STA time was excluded with the defendant's consent and this Court's finding that the exclusion of time and any resulting delay was in the interests of justice, or as a result of a motion or proceeding.[1]

Following the defendant's September 23, 2021 arraignment, he continued to address concerns over the Public Defender's appointment and the potential recoupment of funds. On

---

[1] *E.g.*, ECF 14 (Joint Motion to Continue Preliminary Hearing and Status filed prior to indictment on September 21, 2021); September 27, 2021 Minute Order (ruling on ECF 14 and resulting in excludable time from September 21-September 27, 2021); September 28, 2021 Minute Order (addressing status conference for that same date and excluding STA time from September 28, 2021 to December 6, 2021); December 6, 2021 Minute Order (addressing status conference for that same date and excluding STA time from December 6, 2021 to March 2, 2022); ECF 33 (Joint Motion to Continue Status Hearing and exclude STA time); February 28, 2022 Minute Order (setting an April 21, 2022 status conference and excluding STA time from March 2, 2022 until April 22, 2022); ECF 36 (Joint Motion to Continue and motion to exclude STA time); April 20, 2022 Minute Order (granting ECF 36 and resetting status conference to June 28, 2022); Minute Entry for June 28, 2022 (addressing status conference for that same date and excluding STA time from June 28, 2022 to August 22, 2022); August 22, 2022 Minute Entry (addressing status conference for that same date and excluding STA time from August 22, 2022 to September 29, 2022); September 29, 2022 Minute Entry (addressing status hearing on that same day and excluding time from September 29, 2022 to October 28, 2022); October 28, 2022 Minute Entry (addressing status hearing on that same date, excluding STA time from October 28, 2022 to January 6, 2022, and setting deadline for defendant's pretrial motions of January 6, 2023); *see also* July 14, 2023 Transcript of Status Conference ("Tr.") at 3-4 (court's observation of defendant's arrest on March 21, 2021 and statement that "The Speedy Trial Act time was excluded with his consent at every status conference through the filing of the motion to dismiss").

January 3, 2022, the defendant moved to vacate the status hearing Magistrate Judge Harvey scheduled for January 7, 2022 to address the Loganbill's eligibility for appointed counsel. ECF 27. In that motion, the defendant sought an order vacating the status hearing, a finding that he was indigent, and a ruling that he need not reimburse the costs of his representation by appointed counsel. ECF 27 at 4. The motion was denied in part and granted in part through a written order that did not resolve Loganbill's request for a finding of indigence that removed the potential for recoupment of funds. Instead, the order postponed the status hearing. ECF 30 (continuing the status until September 8, 2022, and requiring the Federal Public Defender to continue to track the costs of representation). On September 16, 2022, Magistrate Harvey vacated the September 8, 2022 date for the status and directed the parties to file a joint status update, within 14 days of the conclusion of the prosecution, that proposed a date for a status hearing to address issues related to "ascertainment of counsel/recoupment." September 16, 2022 Minute Order.

The parties attempted to negotiate a plea bargain while this case was pending. *See* ECF 14 at 2 (noting that the parties had just began negotiations for a resolution of the case). By October of 2022, those negotiations concluded without reaching an agreement to resolve the case. On October 28, 2022, as referenced above in footnote 1, the parties appeared for a status hearing where Loganbill sought more than two months to file motions to dismiss. This Court thus set deadlines of January 6, 2023 for Loganbill to file his motions, January 20, 2023 for oppositions from the United States, and January 27, 2023 for replies from Loganbill. October 28, 2022 Minute Entry.

On January 7, 2023, the defendant filed three motions that included a motion for a change of venue, a motion to dismiss Count One of the indictment, and a motion to dismiss Counts Two and Three. ECF 44, 45, 46. The United States filed timely responses to all motions on January 20, 2023. ECF 47, 48, 49. This Court denied the motion to change venue on April 19, 2023. ECF 50.

On May 1, 2023, this Court denied the remaining two motions seeking dismissal of counts. ECF 51.

On June 28 and 29, 2023, chambers for this Court contacted counsel for the parties to determine their availability for a status hearing, and through that outreach, this Court learned of dates when respective counsel were unavailable. Tr. at 5. On June 29, 2023, This Court scheduled a status conference for July 14, 2023 at 10:00 a.m. On July 10, 2023, the defendant filed a motion to dismiss based on an alleged violation of the STA. ECF 52.

The defendant maintains that the time permitted under the STA to try the defendant expired before this Court ruled on any motion to dismiss, and alternatively, that such time expired by July 10, 2023. The United States submits that the defendant has overlooked periods of tolling under the STA as well as the current and suitable ability of this Court to exclude time in the interests of justice under 18 U.S.C. § 3161(h)(7). Moreover, even if this Court were to find otherwise, the defendant has failed to justify relief in the form of a dismissal with prejudice.

## LEGAL STANDARDS

The STA requires that the trial of an indicted defendant commence within 70 days from the filing date (and making public) of the indictment, or from the date the defendant has first appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. 18 U.S.C. § 3161(c)(1). The STA further provides that certain periods of delay shall be excluded from computation of the 70-day deadline. 18 U.S.C. 3161(h). For example, Section 3161(h)(1) provides a non-exhaustive list of "other proceedings concerning the defendant" that generate excludable delay. *United States v. Garrett*, 720 F.2d 705, 709 (D.C. Cir. 1983) ("The list of 'other proceedings', [sic] as this language shows, is merely illustrative and not intended to be exhaustive."). Certain periods of excludable delay apply automatically, while others require the

Court to make specific findings. *See, e.g.*, *Bloate v. United States*, 559 U.S. 196, 204 (2010) (referencing the eight paragraphs in subsection (h)(1) of Section 3161 that address "the automatic excludability of delay generated for certain enumerated purposes"); *United States v. Nordean*, No. 21-cr-175 (TJK), 2022 WL 2375810, at *5 (D.D.C. June 20, 2022) (determining that the STA "automatically excludes" applicable time from computation under Section 3161(h)(1)(H)); *compare United States v. Zedner*, 547 U.S. 489, 506 (2006) (to grant an ends-of-justice continuance under Section 3161(h)(8)(A), a court must set forth orally or in writing its reasons for finding that the ends of justice are served and they outweigh other interests).

With one exception not applicable in this case, a defendant has the burden of proof for a motion to dismiss an indictment pursuant to the STA. 18 U.S.C. § 3162(a)(2).[2] If the defendant is able to meet his burden, the Court must consider whether to dismiss the indictment with or without prejudice. *Id*. To decide that question, the Court must consider: 1) the seriousness of the offense; 2) the facts and circumstances of the case which led to dismissal; 3) and the impact of a reprosecution on the administration of the STA and on the administration of justice. *Id.*

## ARGUMENT

### I. No Violation Of The STA Has Occurred

Since the defendant's arrest, and since the filing of the indictment, time under the STA has been excluded with the defendant's consent through completion of the briefing for his first three motions to dismiss. Tr. at 3-4. Loganbill does not contest the exclusion of time under the STA for nearly all of the time his case has been pending. In his motion, he concedes that the time from the filing of the indictment to the October 28, 2022 status conference was excludable. ECF 52 at 6-7. His motion does not address the period from October 28, 2022 until January 6, 2023, which,

---

[2] That exception applies to Section 3161(h)(3), which provides for the exclusion of time due to the absence or unavailability of the defendant or an essential witness. 18 U.S.C. § 3162(a)(2).

without objection from Loganbill, this Court excluded from STA computations in the interests of justice. October 28, 2022 Minute Entry. His motion, ECF 52, raises no objection to the Court's decision to exclude this period of time either. Instead, Loganbill protests that after seeking over two months to file what he now describes as three "pro forma" motions, ECF 52 at 3, the time available to start his trial expired before this Court disposed of his motions. Under Loganbill's computation, which the United States disputes, the time to start his trial ended on or about April 4, 2023. *See* ECF 52 at 7 (asserting that the United States had 70 days from January 27 to begin his trial).

Loganbill pins his entire analysis on a single provision of the STA, 18 U.S.C. § 3161(h)(1)(H). That provision excludes "delay reasonably attributable to any period, not to exceed 30 days, during which any proceeding concerning the defendant is actually under advisement by the court." Although accurate in some respects, Loganbill's analysis ultimately fails for the following reasons. *First*, and as explained below, he miscalculates the period when his motions were excluding time because they were under advisement by this Court. *Second*, even when his miscalculation is corrected, Loganbill's argument can succeed only if no other exclusions apply. *Finally*, Loganbill overlooks another pending motion that stopped the STA clock under a different provision of the STA. Accordingly, this Court can and should reject his calculations and his claim of an STA violation.

    A.  <u>Loganbill Erroneously Calculates The Time His Motions Excluded</u>

Loganbill filed his motions on January 7, 2023. ECF 44-46. The day a motion is filed is excluded from the calculation of the STA's 70-day deadline. *United States v. Fonseca*, 435 F.3d 369, 372 (D.C. Cir. 2006). Accordingly, January 7, 2023 is also excluded from STA computations.

The amount of time that a court takes to decide "any pretrial motion" is excluded from the

STA's 70-day limit. 18 U.S.C. § 3161(h)(1)(D). The precise amount of time excluded depends on whether the Court chooses to hold a hearing on the motion or not. If the Court holds a hearing, then the time from the filing of the motion through the conclusion of the hearing is excluded regardless of whether the motion actually delays the trial and regardless of whether the amount of the delay was reasonable. *United States v. Tinklenberg*, 563 U.S. 647, 656 and 658-59 (2011) (Section 3161(h)(1)(D) applies to the time actually consumed by consideration of the pretrial motion; exclusion provision for pretrial motion is not limited to only reasonable delays); *United States v. Van Smith*, 530 F.3d 967, 969 (D.C. Cir. 2008) (same). If a court takes a motion under advisement following a hearing, an additional 30 days from the conclusion of the hearing may be excluded. *Id*. (citing *United States v. Saro*, 24 F.3d 283, 292 (D.C. Cir. 1994).

Where a pretrial motion does not involve a hearing, the STA excludes the period of time from the filing of the motion through the day the court receives 'all the papers it reasonably expects' to help it decide the motion. *Van Smith*, 530 F.3d at 969; *Saro*, 24 F.3d at 292 (quoting *Henderson v. United States*, 476 U.S. 321, 329 (1986)). After the court receives the necessary papers, the motion is considered under advisement and up to 30 more days may be excluded while the court considers the motion. 18 U.S.C. § 3161(h)(1)(H); *Van Smith*, 530 F.3d at 969 (and cases cited therein).

On January 20, 2023, the United States filed its oppositions to Loganbill's motions. Any reply to the government's opposition was due on January 27, 2023. According to Loganbill, the STA clock started no later than January 27, 2023, the deadline for replies he elected not to file. ECF 52 at 7 ("After January 27, the clock started ticking again" and "the government actually had 70 days from January 27, 2023 to bring Mr. Loganbill to trial"). But Loganbill errs by claiming time under the STA began to run when the briefing schedule for his motions to dismiss concluded.

8

Once the briefing schedule was complete and the motions were under advisement, 30 additional days of exclusion followed. Accordingly, his motions to dismiss excluded time from January 7, 2023 through February 26, 2023.

Alternatively, Loganbill argues that January 27, 2023 was not a triggering date under the STA; instead, according to the defendant, the date the government filed its oppositions is determinative for STA analysis. Under the defendant's overly simplistic reading, because this Court unknowingly received all of the filings for the motion to dismiss it was going to receive on January 20, either the STA clock started on January 20 (under the defendant's incorrect interpretation) or the 30-day extension of excludable time began. This Court should reject Loganbill's alternative approach. Although many things are demanded of federal judges, they are not expected to be psychic. This Court ordered a briefing scheduled that included a deadline for replies on January 27, 2023. Apparently, when the deadline was set, the defense never advised the Court that this deadline was unnecessary. There is no indication on the docket of any notification to this Court that replies from the defense would not be expected.

Similarly, the defendant's current claim that the Court should somehow have guessed that no replies were forthcoming because the motions were filed to 'preserve the record' is not persuasive. Loganbill fails to explain why he would not also seek preservation of arguments available in reply to the government's oppositions. He also fails to show why it would not be reasonable for the Court, having set a standard briefing schedule consistent with its local rules, not only to expect the complete range of filings but to wait until conclusion of the briefing cycle before taking motions under advisement. Accordingly, this Court should reject Loganbill's alternative calculation of excludable time running from filing date of the government's oppositions, and find

that the motions to dismiss, ECF 44-46, automatically generated excludable time from January 7, 2023 through February 26, 2023.

> B. Because Loganbill Has Overlooked Other Grounds To Exclude Time, No STA Violation Has Occurred

While the government's calculation of excludable time from the motions to dismiss is greater than the defendant's, it does not, without more, exclude sufficient time to meet the 70-day deadline the STA requires. Nevertheless, Loganbill's argument for dismissal fails insofar as it rests on the assumption that no other grounds to exclude time exist. Because that assumption is wrong, Loganbill cannot show a failure to comply with the STA.

Indeed, another motion the defendant has overlooked is currently generating excludable time. *See* ECF 27. As noted above, that motion sought to vacate a status hearing; however, it also sought other relief that will not be determined before a hearing occurs. The other relief sought included rulings that the defendant was indigent and that he did not have to reimburse the costs of his representation by the Federal Public Defender. Magistrate Judge Harvey has not determined that the defendant is indigent without qualification, and he has not yet determined whether recoupment of costs is warranted. On January 3, 2022, Magistrate Judge Harvey issued an order, ECF 30, partially granting and partially denying the motion docketed as ECF 27. In doing so, however, that same order did not address or resolve whether the defendant's indigency was more than temporary and it did not address or resolve whether the defendant would need to reimburse the costs of his representation. Moreover, the order rescheduled the status hearing that Loganbill sought to vacate.

Magistrate Judge Harvey has continued to require the Federal Public Defender to track the costs of representing Loganbill. Throughout the pendency of this case, Magistrate Judge Harvey has attempted to hold a status hearing to address indigency and recoupment of costs. Loganbill

has sought continuances of those hearings or attempted to have them vacated. As of now, Magistrate Judge Harvey has ordered that the hearing will occur at the conclusion of the prosecution; however, he has never dispensed with the hearing. His order rescheduling the hearing in response to Loganbill's motion could not be a stronger clarification that, in the eyes of the magistrate judge, the open issues Loganbill sought to resolve under the heading of a motion to vacate require a hearing. In any event, considerable deference is accorded to a court's decision that a hearing is necessary. *See United States v. Ibrahim*, 814 F.3d 30, 33 (1st Cir. 2016) ("appellate courts generally have been reluctant to question the judgment of a district court that a hearing is required" and "are loath to question the court's judgment in this area absent obvious subterfuge" allowing "either the district court or the prosecution to jerry-build a 'hearing' in order to thwart the continuous operation of the Speedy Trial Act.") (Souter, Associate Justice, sitting by designation).

Accordingly, 18 U.S.C. § 3161(h)(1)(D) applies. That portion of the STA excludes delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Regardless of whether the defendant's motion could have been heard earlier, the entire period of the motion's pendency is excludable. *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014). The motion remained pending from January 27, 2023, through the date that Loganbill moved to dismiss this case pursuant to the STA, ECF 52. As this Court has noted, and as the defendant does not dispute, Tr. at 3, the pending STA motion also stops time under the STA from elapsing and is currently doing so. *United States v. Hemphill*, 514 F.3d 1350, 1357 (D.C. Cir. 2008) (a defendant's motion to dismiss for a speedy trial violation will itself stop the clock). As a result of the hearing still pending as a result of ECF

11

27, along with the recent motion under the STA, ECF 52, no time has elapsed under the STA and there is no basis for dismissal.

Finally, even assuming arguendo an STA violation, such violation was clearly inadvertent. After this Court settled the motions on or about May 1, 2023, neither the Court nor the parties sought a hearing until late June. No involved party was waiting for a pin to drop or time to lapse. Rather, the parties continued on their course, awaiting the Court's direction. This Court can and should issue an ends-of-justice exclusion of time *nunc pro tunc*. *See, e.g.*, *United States v. Correa*, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2011) (retroactively excluding time under STA following a terrorist attack); *United States v. Sanchez-Senda*, 2018 WL 1737615, at *1 (D.P.R. 2018) (retroactively excluding time under Section 3161(h)(7) following court closure due to Hurricane Maria). Such exclusions are only appropriate to the extent that they "reflect the reality of what has already occurred." *Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 700–01 (2020) (internal quotation marks omitted). "The court 'cannot make the record what it is not.'" Id. at 701 (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990)). While courts may retrospectively provide a rationale for an exclusion that was explicitly or implicitly granted, courts may not retrospectively grant exclusions. *See Zedner*, 547 U.S. at 506–07 & n.7; *United States v. Edwards*, 627 F.2d 460, 461–62 (D.C. Cir. 1980) (affirming the district court's decision to grant a thirty-three-day continuance when the court supplied its reasons for the continuance on a status call nearly five weeks later).

## II. Alternatively, Even If This Court Were To Find That The STA's Trial Deadline Has Passed, Dismissal Should Be Without Prejudice

The remedy for a violation of the STA pursuant to 18 U.S.C. § 3161(c)(1) is dismissal of the indictment; however, the Court must assess whether dismissal occurs either with or without prejudice by balancing "the seriousness of the offense; the facts and circumstances of the case

which led to the dismissal; and the impact of a re-prosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2); *see also United States v. Taylor,* 487 U.S. 326, 335–37 (1988); *United States v. McLendon*, 944 F.3d 255, 263–64 (D.C. Cir. 2019); *United States v. Wright*, 6 F.3d 811 (D.C. Cir. 1993). The decision, based on these factors, is "left to the guided discretion of the district court" and the Act gives no priority to dismissal with prejudice or dismissal without prejudice. *Taylor,* 487 U.S. at 335; *Wright*, 6 F.3d at 814 (the STA explicitly grants discretion to the trial court to determine what form dismissal will take. In this case, every relevant factor strongly supports a dismissal without prejudice.

    A.  <u>The Offenses Are Serious And Weigh Heavily Towards Dismissal Without Prejudice</u>

The charges against the defendant include obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2), a felony with a maximum penalty of incarceration for 20 years. That significant penalty, however, is only one measure of the seriousness nature of offenses here. *See United States v. Bittle*, 699 F.2d 1201, 1208 (D.C. Cir. 1983) ((district court properly "us[ed] the punishment prescribed by statute for possessing stolen mail matter [ten years] as a measure of the severity of the crime").

All of the charges in this case, including the misdemeanor offenses that accompany the Section 1512 offense, are serious, and should not be considered in the abstract or out of context. Every charge against Loganbill arose in the context of a prolonged and violent riot occurring to stop the peaceful transfer of power following a presidential election. This violent attack on the Capitol forced an interruption of Congress's certification of the 2020 Electoral College vote count, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses. The attack "posed a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). It also "endangered hundreds of federal officials in the Capitol

13

complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 579 F.Supp. 3d 1, 8 (D.D.C. 2021). Between December 19, 2020 and January 16, 2021, Loganbill posted multiple comments to his Facebook page related to his planning, preparation, and participation in the riot:

- December 19, 2020: "They haven't seen a riot, till our side gets started."
- January 4, 2021: "President Trump has been right on just about everything he said … So when he says the election was rigged I'll bet my life on him being right … 74 million strong sir, we got your back."
- January 6, 2021: "Everything was fine all the way to the Capitol, we were near the front, I didn't see any push against the police line until after 8-10 tear gas canisters were fired into the crowd. Then we pushed forward and broke the line into the Capitol. Inside the Capitol was confrontational, but no Patriots hit any police that I was, they sprayed us down several times."
- January 7, 2021: "It's like I told one of the cops that seemed in charge of the police line. You see what we did today 'peacefully' it won't be that way when we return. He said I know, I'm on your side, but my duty is to secure the building and those inside. We shook hands and I walked out of the building."
- January 7, 2021: "The 'widespread destruction' is total BS, there were a few, most likely antifa, that busted some windows, the rest were there to show that 'we' could take what we wanted peacefully. And we did, afterwards we also walked out peacefully. Some cops just a bit belligerent and they got less cooperation, but no punches thrown or fighting of any kind that I saw."
- January 7, 2021: "They saw how easy we took the Capitol – unarmed, and peacefully, next time …"

Loganbill himself went to the Capitol dressed for battle. *See* ECF 1-1 at 15. His offenses could not have been more serious.

That Loganbill is not alleged to have acted with violence does not change the serious nature of the offenses, contrary to the contentions in his motion. *See United States v. Wright*, 6 F.3d 811, 814 (D.C. Cir. 1993) (drug and weapons offenses were serious). All of his offenses were serious, and Loganbill fails to offer any recognized or persuasive argument to the contrary. This factor supports a dismissal, if any, without prejudice.

B.  <u>Circumstances Leading To Potential Dismissal Warrant Dismissal Without Prejudice</u>

Facts supporting a dismissal with prejudice include "bad faith," a "pattern of neglect," or "something more than an isolated unwitting violation" on the government's part. *Taylor*, 487 U.S. at 339. Loganbill shows no such facts. For more than two years, while all parties and courts throughout the country were burdened by an unprecedented global pandemic, and while, during that same period, this district confronted an equally unprecedented influx of hundreds of new cases from the Capitol riot atop a backlog of cases that could not proceed to trial as a result of the pandemic, no time elapsed under the STA. Counsel for the parties submitted timely joint filings to this Court providing reasons to toll the STA clock that this Court approved without objection.

An important part of this inquiry is whether any violation of the STA was an isolated and unwitting. *Wright*, 6 F.3d at 814. That is all that the record shows here. Any failure in this case to continue the government's scrupulous attention to STA deadlines occurred through a single instance of overlooking the correct amount of excludable time generated by pending motions. The record is utterly devoid of a pattern of neglect or any bad faith. *See also United States v. Lamont Goodwin*, 20-cr-11-CJN, ECF 25, at *7 (D.D.C. Feb. 10, 2022) (noting that the failure to comply with the STA was a "relativity isolated oversight" and involved a gun offenses, which was a "very serious" crime).

The length of delay does not call for dismissal. Where the crime charged is serious, the sanction of dismissal with prejudice should only be imposed for serious delay. *United States v. Barro*, 661 Fed. Appx. 741, 742 (2d Cir. 2016) (citing *United States v. Bert,* 814 F.3d 77, 79 (2d Cir. 2016)); *see also United States v. McClendon,* 944 F.3d 255, 264 (D.C. Cir. 2019) (noting that the decision in *Bert* emphasized the importance of a "very lengthy delay" to tip the balance in favor of a dismissal with prejudice). Here, Loganbill does not raise, let alone argue, the existence

of delay long enough to warrant a dismissal with prejudice. Should this Court find that the STA deadline for trial passed in early May (which the United States submits for the reasons above is unnecessary), the time that followed does not amount to a level of delay warranting dismissal with prejudice. *Compare McClendon*, 944 F.3d at 267 (reviewing cases where dismissal was without prejudice with delays of 101 non-excludable days, 216 or 414 non-excludable days,). In this case, the non-excludable delay was far less, and for that reason, dismissal with prejudice is not supported.

Here, the defendant has not shown dismissal with prejudice is appropriate. The circumstances of this case weigh in favor of a dismissal without prejudice.

C. <u>Impact On The Administration Of The STA and Of Justice Favors Dismissal Without Prejudice</u>

Section 3162(a) directs this Court to assess "the impact of a reprosecution on the administration of this chapter and on the administration of justice," and has been interpreted to mean prejudice to the defendant's ability to defend against the charges caused by delay. *See Taylor* 487 U.S. at 340 ("The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty"). Although noting this factor, ECF 52 at 8, Loganbill "does not claim that he was prejudiced by the delay in bringing him to trial." *United States v. Ferguson*, 565 F. Supp. 2d 32, 48 (D.D.C. 2008) (dismissing indictment without prejudice). Nor is this a case where a STA violation increased the length of the defendant's pretrial detention. *See McLendon*, 944 F.3d at 267 (affirming dismissal without prejudice even though defendant "assert[ed] that his liberty interest was impaired because he remained in jail after the speedy trial violation"; "courts have found even longer periods of delay to support a dismissal without prejudice despite any alleged prejudice to the defendant's liberty interest").

This is not a case where the defendant demanded a trial before expiration of the STA's deadline. It is not a case where either the government or this Court rejected any application from the defendant for the Court to set a trial date, or where the government sought a continuance over the defendant's objection. Moreover, from the record, it is far from clear that the defendant was ready to try this case before expiration of the STA's deadline. For example, as recently as the July 14, 2023 status conference, the defense had not resolved whether to seek a jury or a bench trial, deciding that question when this Court allowed a break in that hearing. Tr. at 7, 9-10 (defense counsel's statement that "I haven't spoken to Mr. Loganbill about jury versus bench trial" and use of break-out room). At that status conference, the defense also expressed uncertainty about scheduling travel for Loganbill, a Missouri resident. Tr. at 8. After a conference, the defense announced that Loganbill could not get to this district for trial before July 24, 2023. In this context, prejudice to the defendant from delay appears unlikely. This factor also weighs against a dismissal with prejudice.

## CONCLUSION

For the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the government respectfully requests that the defendant's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:    */s/ Douglas Meisel*
DOUGLAS MEISEL
Assistant United States Attorney
NY Bar No. 4581393
601 D Street NW
Washington, DC 20530
Douglas.meisel@usdoj.gov
(202) 923-7821