UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MATTHEW LOGANBILL,**<br><br>　　　　　**Defendant.** | **Crim. Action No. 1:21CR593** |

### MR. LOGANBILL'S REPLY TO THE GOVERNMENT'S RESPONSE TO MOTION TO DISMISS UNDER THE SPEEDY TRIAL ACT

Matthew Loganbill, through counsel, respectfully replies to the government's Opposition to his Motion to Dismiss for Violation of the Speedy Trial Act (STA). The government's Opposition lays bare that it has no valid argument that a trial past July 10, 2023, would not violate the STA. First, the government essentially argues that because Magistrate Judge Harvey has not yet determined whether recoupment of costs for court-appointed counsel is warranted and he will not make that determination until the end of the case, the Speedy Trial Act is tolled indefinitely. The government's argument on this point is so strained and nonsensical that it exposes the weakness in the government's position. Second, the government is incorrect when it argues that the Court may exclude time "*nunc pro tunc.*" Finally, the government argues that if the Court finds dismissal is warranted, the Indictment should be dismissed without prejudice. The government made the decision to indict Mr. Loganbill (along with hundreds of other January 6 defendants) long before it was ready for trial and for two years, it represented that a misdemeanor resolution could

be appropriate, which caused Mr. Loganbill to agree to the exclusion of time. The Court should not sanction the government's machinations here and should dismiss the Indictment with prejudice.

   **1. The defense motion correctly calculates excludable time; even if the Court finds that the Motions do not fall under *United States v. Henderson*, the STA has been violated.**

Mr. Loganbill has argued that the motions that the defense filed fall under *United States v. Henderson*, 476 U.S. 321 (1986) because they were motions that could be (and were) resolved in the papers. Therefore, the Court had 30 days under the STA to take the Motions under advisement. Def. Mot. at 4-7. Motions were completely filed by January 27, 2023, therefore the clock started ticking 30 days later, on February 26, 2023.[1]

Even if the Court finds that the Motions were those that require a hearing, the Court disposed of the Motions on May 1, 2023. Therefore, at best, the government had seventy days from May 1, 2023, to bring Mr. Loganbill to trial. It failed to do so. Therefore, a trial after July 10, 2023, violates the STA and the Indictment must be dismissed. 18 U.S.C. § 3162(a)(2) (when a trial is not commenced within the

---

[1] Undersigned counsel notes that the initial motion incorrectly read, "After January 27, 2023, the clock started ticking again. Thus, the government actually had seventy days from January 27, 2023, to bring Mr. Loganbill to trial." Def. Mot. at 7. This was a scrivener's error. The Motion should have read "thirty days after January 27, 2023, the clock started ticking again." The government is correct when it states "his motions to dismiss excluded time from January 7, 2023 through February 26, 2023." Gov. Opp. at 9. In any event, the government is well past seventy days from February 26, 2023.

2

prescribed period of time, "the information or indictment *shall be dismissed* on motion of the defendant") (emphasis added).

### 2. Magistrate Judge Harvey's pending determination as to whether recoupment of costs is warranted is not grounds to exclude time.

The government strains to argue that the Federal Public Defender's oral request to appoint the FPD to represent Mr. Loganbill is a "motion" that would exclude time under the STA. A request to appoint counsel is not a "pretrial motion" that would result in the exclusion of time under the STA. While the STA does not define the term "motion," the D.C. Circuit has opined that in determining whether a filing is a "motion" the court must be "mindful of the Supreme Court's statement in *Henderson* that the provisions of the Speedy Trial Act are designed to exclude all time that is consumed in placing the *trial court* in a position to dispose of a motion." *United States v. Van Smith*, 530 F.3d 967, 971 (D.C. Cir. 2008) (internal citations omitted) (emphasis added) (holding that an evidentiary notice that does not require the attention of a trial court before trial is not a "motion" that tolls time under the STA simply because the government "styled its filing as a motion"). Magistrate Judge Harvey is not the trial court. Moreover, even if he were, whether Mr. Loganbill will have to recoup costs—an issue that was raised *sua sponte* by Magistrate Judge Harvey—is not an issue that needs to be resolved before trial. Indeed, Magistrate Judge Harvey has put off the status hearing on this issue until after the case is over. It would make no sense that an issue raised *sua sponte* by the Magistrate Court, which is not required to be resolved before trial and which will not be resolved until after trial, would indefinitely toll Mr. Loganbill's right to a Speedy Trial. The

government's argument on this point is nonsensical and underscores the weakness of its position. Moreover, Magistrate Judge Harvey never made a finding that the issue of recoupment excludes time under the STA. It is not surprising that he would not make such a finding because, again, exclusion on those grounds makes no sense and is not supported by any provision in the STA.

### 3. The Court cannot exclude time *nunc pro tunc.*

The government urges the Court to "issue an ends-of-justice exclusion of time *nunc pro tunc*." Gov. Opp. at 12. The Latin phrase "*nunc pro tunc*" describes the Court's authority to amend its record to what was actually done but what was omitted due to a clerical error. However, "[t]his power to amend … must not be confounded with the power to create. It presupposes an existing record, which is defective by reason of some clerical error or mistake." *Gagnon v. U.S.* 193 U.S. 451, 511 (1904); *See also Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 701 (2020) ("*nunc pro tunc* orders are not some Orwellian vehicle for revisionist history – creating 'facts' that never occurred in fact.") (internal quotations omitted).

The Eighth Circuit has previously held that a *nunc pro tunc* order lengthening the time period excluded from the speedy trial clock violated the Speedy Trial Act. *United States v. Suarez-Perez*, 484 F.3d 537 (8th Cir. 2007). In *Suarez-Perez*, the Court explained that the "function of a *nunc pro tunc* order is to correct clerical or ministerial errors, including typographical errors….the function is not to make substantive changes affecting a party's rights." *Id*. at 541. The Court concluded that

the *nunc pro tunc* ordered by the district court excluding time under the Speedy Trial Act was improper because the Act does not "provide for retroactive continuances." *Id.* at 542. The issuance of a *nunc pro tunc* order in Mr. Loganbill's case would not just be correcting a clerical error; it would be making a substantive change affecting his rights under the STA.

The cases the government cites are unavailing because they address situations in which the trial court granted a continuance within the 70-day window but put the reasons for the continuance on the record after the fact. *See United States v. Edwards*, 627 F.2d 460 (D.C. Cir. 1980) (STA not violated where trial court had granted a continuance at an earlier status date but supplied the reasons for the continuance at a later date). Likewise, in *Zedner*, the Supreme Court acknowledged that when a continuance has been granted, the "ends-of-justice" findings may be put on the record at a later date but prior to a remand. *United States v. Zedner*, 547 U.S. 489 (1976). Both of these cases *pre-suppose that a continuance had been granted* within the window allowed by the STA. As such, this case is an entirely different posture than the cases upon which the government relies. In Mr. Loganbill's case, the government did not request and the Court did not grant a continuance within the 70-day window. This is not a situation where the Court granted a continuance and is permitted to subsequently put its ends of justice findings on the record. The law is clear: unless the trial court is correcting a clerical error, the trial court cannot retroactively grant exclude time. The record in this case is also clear—the Court never granted a continuance within the 70-day window. This court should reject the government's

invitation to improperly create a record that does not exist. A trial past that window violates the Speedy Trial Act and the Indictment must be dismissed

### 4. The Court should dismiss the Indictment with prejudice.

In assessing whether to dismiss the Indictment with prejudice, the Court must balance "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). Application of these factors is left to the discretion of the district court. *United States v. Taylor*, 487 U.S. 326, 335-37 (1988). The factors favor dismissal with prejudice.

#### a. *The seriousness of the offense*

The government's hyperbolic characterization of Mr. Loganbill's alleged offenses is belied by the government's lackadaisical handling of this case. Indeed, f*or over two years*, while Mr. Loganbill diligently complied with conditions of pre-trial release, the government suggested that a misdemeanor resolution would be appropriate in this case. It even went so far as to represent that if a trace investigation showed that Mr. Loganbill did not engage in violence, Mr. Loganbill could enter into a misdemeanor resolution. Yet, when the government's trace investigation showed that Mr. Loganbill did not engage in any violence, it reversed course, even though no new evidence had emerged. The government points to Mr. Loganbill's messages and social media posts to support its contention that his alleged offenses "could not have been more serious." Gov. Opp. at 14. It is true that Mr. Loganbill's posts reflected the bombastic rhetoric about the election that was being

6

promoted by the former president and right-wing news organizations. But without violent conduct to accompany the messages, they are nothing more than regrettable bluster that mirrored the language used by the former president himself in the days leading up to January 6. Finally, the government points to the gas mask and helmet Mr. Loganbill donned at the Capitol. As Mr. Loganbill explained to law enforcement, he wore the gear to protect against antifa counter-protestors, whom he believed would be causing trouble at the rally. There is no evidence that he wore the protective gear for any reason other than to protect against what he earnestly believed could be agitators.[2] Finally, the video evidence shows that when asked to leave the Capitol building, he left peacefully. In short, this case can hardly be characterized as among the most serious of the January 6 cases. Moreover, Mr. Loganbill has done nothing since January 6 to suggest he is a danger to the community. This factor weighs heavily in favor of dismissal with prejudice.

### b. *The facts and circumstances which led to dismissal*

Mr. Loganbill was arrested two and half years ago. Following his arrest, he admitted to law enforcement that he went into the Capitol. The government has been in possession of all the evidence it needed to prosecute Mr. Loganbill for over two years. The government has been aware that Mr. Loganbill lost his business due to

---

[2] In the weeks leading up to the rally, Mr. Loganbill had been exposed to media reports that antifa was going to be at the Stop the Steal rally. Indeed, even after January 6, media organizations, prominent politicians, and other Trump supporters continued to promote the idea that antifa was at the Capitol on January 6. *See* Michael M. Grynbaum, Davey Alba & Reid J. Epstein, *How Pro-Trump Forces Pushed a Lie about Antifa at the Capitol Riot*, N.Y. TIMES, March 1, 2021, https://www.nytimes.com/2021/03/01/us/politics/antifa-conspiracy-capitol-riot.html.

7

the pending felony and at least one assigned assistant prosecutor appreciated that Mr. Loganbill could stand to permanently lose his primary source of income if convicted of felony.[3] For his part, Mr. Loganbill cooperated with the government and complied with conditions of release. When the trace investigation came back with no evidence that Mr. Loganbill engaged in any violence, the government declined to extend the resolution the parties had been discussing. Instead of resolving the case, the government let it fall to the backburner for months until chambers reached out to counsel to set a status hearing date. The government's misleading representations, which caused Mr. Loganbill to agree to toll time under the STA, refusal to resolve the case expeditiously and subsequent neglect of this case, are circumstances which favor dismissal with prejudice.

### c. *Impact on the administration of justice*

Excusing the government's machinations would undermine the fair administration of justice. *See Zedner*, 547 U.S. at 499 (dismissal with prejudice is a "powerful incentive" to comply with the strictures of the Act). Dismissal with prejudice would deter the government from stringing defendants along like the government has done here. It will also deter the government from arresting defendants long before it is ready to try them. As January 6 prosecutions continue in record numbers in this district, dismissal with prejudice would send a message that

---

[3] Prior to his arrest in this case, Mr. Loganbill was a 50% owner of a federally licensed firearms shop. Due to local publicity of his arrest, the shop lost business. Additionally, he could not work in the shop due to pre-trial condition not to possess a firearm. As a result of these hits to the business, he and the co-owner closed the shop and Mr. Loganbill lost his primary source of income.

8

the government does not get a free pass to violate a defendant's rights to a speedy trial simply because it has elected to prosecute hundreds of defendants at once.

Prejudice to the defendant is a relevant consideration under 3162(a)(2) but not determinative. Mr. Loganbill has been under conditions of pre-trial release for two years and has lost his business and primary source of income due to the pending felony charge. The Supreme Court has recognized that prejudice resulting from delay includes prejudice in the defendant's personal, social, and economic life. *Taylor*, 487 U.S. at 340. This factor also weighs in favor of dismissal with prejudice.

## Conclusion

Wherefore the reasons herein and the reasons set forth in Mr. Loganbill's Motion to Dismiss (ECF No. 52), Mr. Loganbill respectfully moves this Court to dismiss the Indictment with prejudice.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
ELIZABETH MULLIN
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500